In re HANSON DREDGING,
INC., Debtor.

MARYLAND CASUALTY COMPANY, a
Maryland Corporation, Plaintiff,

v.

WESTINGHOUSE CREDIT CORPORA-
TION, Cabot, Wenkstern & Casteel, and
Herb Harris, as Trustees of Hanson
Dredging, Inc., Defendants.

Bankruptcy No. 80–00559–BKC–JAG.

Adv. No. 81–0231–BKC–JAG–A.

United States Bankruptcy Court,
S. D. Florida.

Oct. 19, 1981.

Paul R. Regensdorf, Fleming, O'Bryan & Fleming, Fort Lauderdale, Fla., for plaintiff.

James E. Foster, Fishback, Davis, Dominick & Bennett, Orlando, Fla., for Westinghouse Credit Corp.

Wynne M. Casteel, Jr., Cabot, Wenkstern & Casteel, Fort Lauderdale, Fla., for Cabot, Wenkstern & Casteel.

Herb Harris, Hollywood, Fla., trustee.

Jerry M. Markowitz, Markowitz, Davis & Ringel, Miami, Fla., for trustee.

### PRELIMINARY FINDINGS AND CONCLUSIONS AND ORDER FOR FURTHER HEARING

JOSEPH A. GASSEN, Bankruptcy Judge.

This case was tried on the complaint in interpleader of Maryland Casualty Company (hereinafter Maryland Casualty) and the cross-claim of Westinghouse Credit Corporation (hereinafter Westinghouse). Maryland Casualty was the insurer of a bulldozer formerly owned by the debtor Hanson Dredging, Inc. Westinghouse was a secured creditor of the debtor and among its security was the bulldozer. Plaintiff, Maryland Casualty, seeks this court's determination of who should receive the insurance proceeds for the loss of the bulldozer, and names as defendant/claimants, Westinghouse, the debtor, and the debtor's attorney, who claims an attorneys' charging lien on the funds.

Two separate state court cases involving the same facts and parties were pending prior to the debtor's bankruptcy. In the earlier and longer proceeding, Hanson Dredging sued Maryland Casualty to compel it to pay insurance proceeds on the bulldozer. Hanson Dredging obtained a judgment which was sustained on appeal

and Westinghouse's later motion to intervene was denied. Thereafter, Westinghouse filed its own action against Maryland Casualty and Hanson Dredging.

The details of the events leading up to this adversary action are as follows: On March 19, 1975, Westinghouse made a loan to Hanson Dredging in the face amount of $169,298.84 (Westinghouse's Composite Exhibit No. 2). As security, Westinghouse took three pieces of equipment, including the Caterpillar in question. The security agreement, in paragraph 8, provided:

> . . . Debtor assigns to Secured Party all right to proceeds of any insurance not exceeding the unpaid balance hereunder, and directs any insurer to pay all proceeds directly to Secured Party and authorizes Secured Party to endorse any draft for the proceeds.

(Westinghouse's Composite Exhibit No. 2). The financing statement was duly filed with the Secretary of State of Florida, perfecting the security interest in the equipment and proceeds (Westinghouse's Exhibit No. 1).

The bulldozer was insured with Maryland Casualty, and on or about November 14, 1975, it was stolen.

In July, 1976, Wynne Casteel, a partner in the law firm of Cabot, Wenkstern & Casteel, filed a lawsuit on behalf of Hanson Dredging against Maryland Casualty, seeking insurance proceeds for the loss of the bulldozer. On June 20, 1977, judgment was entered for Hanson Dredging in the amount of $39,600 (Casteel's Composite Exhibit No. 1). On July 19, 1977, a judgment for Hanson for attorneys' fees, costs and interest in the total amount of $15,030.53 was entered, including attorneys' fees in the amount of $11,000 (Casteel's Composite Exhibit No. 1). Maryland Casualty appealed from this order.

In January, 1978, the bulldozer was recovered and sold. Proceeds of $24,000 were credited against the judgment.* There was

---

\* These ultimate facts were asserted at trial or in the memoranda without dispute by any party and therefore there is an implied stipulation to these facts. However, if a party disputes them, the issue may be raised at the hearing on proof of amounts.

reference in argument to these proceeds being paid to I.R.S. on behalf of Hanson but there was no actual evidence of this series of events.

On February 21, 1978, Casteel filed his attorney's charging lien (Casteel's Composite Exhibit No. 1).

On February 19, 1979, the judgment for Hanson Dredging was affirmed by the Florida Fourth District Court of Appeal (*Maryland Casualty Co. v. Hanson Dredging, Inc.*, (Fla.App.) 367 So.2d 1141).

On April 6, 1979, Hanson Dredging was awarded a judgment for an additional $3,500 in attorneys' fees for the appeal (Casteel's Composite Exhibit No. 1).

On May 16, 1979, Westinghouse filed a motion to intervene, which was denied on May 30, 1979.* In December, 1979, Maryland Casualty paid $9,000 each to Westinghouse and to Casteel, on behalf of Hanson Dredging.

On January 9, 1980, Westinghouse filed its action against Maryland Casualty and Hanson Dredging for the proceeds of the bulldozer.

On May 9, 1980, Hanson Dredging filed its voluntary chapter 11 petition in bankruptcy. Westinghouse then brought a complaint to lift stay, seeking to proceed in the state court to foreclose its security interest on a dragline, one of the other two pieces of equipment which secured the Hanson debt. On September 23, 1980, this court entered a Final Judgment modifying the stay only to permit Westinghouse to foreclose on the dragline (*Westinghouse Credit Corp. v. Hanson Dredging, Inc.*, 6 B.R. 230 (Bkrtcy. 1980). Despite this specific limitation to the relief requested and ordered, Westinghouse proceeded to obtain a final state court judgment against Hanson Dredging for its total debt, and Westinghouse's cross-claim in this action is based on the outstanding balance on that judgment. The judgment, in the amount of $31,896.27, was entered on October 14, 1980 (Westinghouse's Exhibit No. 3) including $10,500 in attorneys fees, relating to the entire debt, not limited to the dragline foreclosure.

The dragline which was the subject of the Westinghouse adversary proceeding was sold in February, 1981, for $16,000, with net proceeds of $14,062 applied by Westinghouse against Hanson's indebtedness to it. The other parties disputed the net proceeds figure, but did not produce any evidence opposing Westinghouse's.

Meanwhile the debtor converted its bankruptcy proceeding to a chapter 7 proceeding on November 21, 1980.

On March 3, 1981, the Florida Fourth District Court of Appeal affirmed the denial of Westinghouse's motion to intervene in the Hanson case against Maryland Casualty (393 So.2d 595).

On March 17, 1981, a further attorneys' fee for the second appeal, in the amount of $3,000, was awarded to Hanson by the state court and an order of attorneys' charging lien, in the amount of $26,083.50 was entered for Casteel.

The complaint in interpleader was filed on May 5, 1981.

To determine to whom Maryland Casualty is to pay the insurance proceeds, this court must determine the validity and priority of the asserted liens. All parties agree that Westinghouse has a perfected security interest. Therefore the first issue before this court is whether Casteel has a valid attorneys' charging lien. If so, the priority of the various interests must be determined. Finally, the amount of each valid lien and the amount now payable by Maryland Casualty must be resolved.

*Validity*

■ The state court order of March 17, 1981 affirming Casteel's charging lien in the amount of $26,083.50 (Casteel's Composite Exhibit No. 1) is not binding on this bankruptcy court as a determination of the validity of Casteel's charging lien. That order comes within the terms of the automatic stay provision, 11 U.S.C. § 362(a)(4) "any act to create, perfect, or enforce any lien against property of the estate," or (5) "any act to create, perfect, or enforce against property of the debtor any lien to

the extent that such lien secures a claim that arose before the commencement of the case...." As such, it is null and void because no judgment was entered lifting the stay. 2 Collier on Bankruptcy ¶ 362.11 (15th ed.). This court rejects Casteel's argument that the stay did not apply because the debtor had no equity in the insurance proceeds and therefore they did not come into the bankruptcy estate.

However, this court can make its own determination of that issue, and it concludes that Casteel has a valid charging lien.

■ Florida law must be used to determine the existence and amount of the attorney's charging lien here, as well as its priority in relation to the Westinghouse security interest. *In Re Diplomat Electric, Inc.* 361 F.Supp. 1163 (S.D.Fla.1973), Aff'd. 499 F.2d 342 (5th Cir. 1974).

■ Charging liens in Florida are governed by common law principles. "The charging lien is an equitable right to have the costs and fees due the attorney for services in the suit secured to him in the judgment or recovery in that particular suit." *Worley v. Phillips*, 264 So.2d 42, 43 (Fla.App.1972). A charging lien must be based on an agreement for a fee, express or implied, and the contract may be a contingent fee contract. *Billingham v. Thiele*, 107 So.2d 238 (Fla.App.1958) cert. dismd., 109 So.2d 763; *United States Transocean Air Lines, Inc.*, 356 F.2d 702 (5th Cir. 1966).

■ The court finds that Casteel had entered into a contract with Hanson Dredging to provide legal services in obtaining the insurance proceeds and that it was contemplated by both parties that his fee was to be paid out of the recovery, if any. He thus has an attorney's charging lien on the insurance proceeds.

## PRIORITY

The trustee conceded that both Westinghouse and Casteel had priority over him. The court agrees with that assessment of his position.

■ As to priority between Casteel and Westinghouse, the court concludes that the attorney's charging lien is inferior to the security interest of Westinghouse. A charging lien is subject to any rights in property which are valid against the client at the time the lien attaches, and the attorney's lien attaches only to the debtor's equity in the property. *In Re Diplomat*, above; 4 Fla.Jur.2d *Attorneys at Law* § 162 (1981). No matter what point in time the charging lien might relate back to, Westinghouse's security interest was perfected several months before the theft which gave rise to Hanson's lawsuit and Casteel's legal services.

■ While Westinghouse has first priority to the insurance proceeds, which are UCC "proceeds" of its original collateral (the bulldozer,) another factor must be considered. The judgments obtained by Hanson included not only the insurance proceeds but also attorneys' fees and costs, which would not be UCC "proceeds" of the bulldozer. The amount of those awards would ordinarily be deducted from the total Maryland Casualty judgment debt before it is applied to Westinghouse's security interest. It must be kept in mind, however, that a disbursement was previously made to Casteel for Hanson of $9,000, and Hanson received a credit of $24,000 because it recovered the bulldozer. These amounts would more than cover the difference between UCC "proceeds" and the amount of the judgments awarded to Hanson and against Maryland Casualty.

### Amount

The court has insufficient evidence to determine the actual amounts to be disbursed to Westinghouse and Hanson respectively, from the registry of the court, and whether or not Maryland Casualty deposited its full obligation into the registry. Westinghouse commenced its proof with the state court judgment which went beyond the modification of stay permitted by this court. That judgment was obtained by default and this court will not adopt that deficiency as the basis for a judgment for

Westinghouse here, without evidence of the underlying facts.

 Casteel's charging lien would be based upon the amount agreed upon with his client, not the amount of fees awarded Hanson by the trial court. However, this may be moot, depending upon the final findings as to the other amounts.

Therefore, it is ORDERED that a further hearing be set on *Monday, November 2, 1981, at 9:30 a.m., in the United States Courthouse, Room 203C, 299 East Broward Boulevard, Fort Lauderdale, Florida*, for proof of amounts in accordance with these Preliminary Findings and Conclusions.