**In re HANSON DREDGING, INC., Debtor.**

**MARYLAND CASUALTY COMPANY, a Maryland corporation, Plaintiff,**

v.

**WESTINGHOUSE CREDIT CORPORATION, Cabot, Wenkstern & Casteel, and Herb Harris, as Trustee of Hanson Dredging, Inc., Defendants.**

**Bankruptcy No. 80–00559–BKC–JAG. Adv. No. 81–0231–BKC–JAG–A.**

United States Bankruptcy Court, S. D. Florida.

Jan. 4, 1982.

As Amended Jan. 27, 1982.

See also 15 Bkrtcy. 79.

Paul R. Regensdorf, Fleming, O'Bryan & Fleming, Fort Lauderdale, Fla., for plaintiff.

James E. Foster, Fishback, Davis, Dominick & Bennett, Orlando, Fla., for Westinghouse Credit Corp.

Wynne M. Casteel, Jr., Cabot, Wenkstern & Casteel, Fort Lauderdale, Fla., for Cabot, Wenkstern & Casteel.

Herb Harris, trustee.

Jerry M. Markowitz, Markowitz, Davis & Ringel, Miami, Fla., for trustee.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, District Judge.

The Preliminary Findings and Conclusions entered October 19, 1981 are incorporated herein. 15 B.R. 79, Bkrtcy. At the subsequent hearing on damages, held November 2, 1981, counsel confirmed that the parties have stipulated to all facts set forth in the Preliminary Findings and Conclusions which had not been specifically proven at trial. Counsel also stipulated that the amount deposited by Maryland Casualty in the registry of the court is the full balance of the amount it owes on its insurance obligation.

At the November 2, 1981 hearing, Westinghouse submitted an affidavit of costs it incurred in connection with the several litigations over this security agreement, (Westinghouse's Exhibit No. 5) and a summary of additions to and reductions from the balance owed to Westinghouse by Hanson since November 15, 1977 when Westinghouse commenced the first litigation (Westinghouse's Exhibit No. 6). Barbara Williams, district credit manager, James Foster, attorney for Westinghouse, and Terrence Russell, expert witness on attorneys' fees, also testified for Westinghouse. No other party submitted any evidence.

The security agreement provided that the collateral would secure all indebtedness, including "all expenses, costs, and fees, including reasonable attorney's fees, paid or incurred by Secured Party in connection with the collection of any indebtedness or the ... taking possession, realization upon, disposition or enforcement of any collateral" (Westinghouse's Exhibit No. 2).

Upon consideration of the evidence, the court concludes that certain costs and a portion of the fees sought by Westinghouse cannot properly be awarded against Hanson, as will be set forth in detail below. In Westinghouse's records of the account, (summarized on Westinghouse's Exhibit No. 6) Westinghouse included default interest on certain amounts which this court is disallowing. No calculation was made and no evidence offered by which the court might make its own calculations, and therefore, none of the default interest included by Westinghouse is being allowed.

Foster testified as to the number of hours spent on each separate litigation, but no further break down was provided. There was no written summary, and the firm's invoices to Westinghouse were not offered in evidence by either party. Foster testified that the hours billed to Westinghouse included paralegal and associate time, although these portions were not distinguished in the hourly summaries. At the inception of the litigation in 1977, Foster billed Westinghouse at $70–$75 per hour. At some point between then and the present, the rate was raised to $80 per hour. The Westinghouse agreement with Foster is that Foster will also receive any additional fees awarded by a court to Westinghouse. Paralegal work is presently billed at $25 per hour, and other lawyers in his firm are billed at a rate lower than $80 per hour.

The hours expended by Foster's firm, as testified to, were as follows:

30.3 hours—State court replevin action against Capeletti, and sale of one dragline.

10.4 hours—Intervention in Hanson's state trial court action against Maryland Casualty.

10.6 hours—Intervention appeal.

17.3 hours—Bankruptcy court proofs of claim and complaint and motion for adequate protection and to lift stay.

29.6 hours—State court action against Hanson before bankruptcy and after stay was lifted.

52.9 hours—Defense of this interpleader action until the November 2, 1981 hearing.

10 hours—Estimated time spent on the day of the further hearing.

■ All these matters came within the terms of the security agreement because, at the time each was undertaken, it was necessary or reasonable for the protection or enforcement of the security agreement.

■ The litigations occurred in Broward, Dade and St. Lucie counties. The attorney employed by Westinghouse maintains his office in Orlando. While there may be a saving to Westinghouse (and therefore to Hanson) in using only one attorney, rather than having two or three acquaint themselves with the facts, there is also an additional cost in attorney's time and travel expenses, especially as here, where none of the litigation was in Orlando. The evidence is insufficient to determine what proportion of the hours billed is related to travel, and the court will assume that the considerations balance out as to hours spent. However, attorney travel expenses will not be allowed. Similarly, although a creditor cannot be penalized simply because collection procedures are expensive, the court cannot ignore a consideration of the result achieved by an attorney for his creditor-client. Here the loan balance at the time litigation commenced was approximately $20,000, and Westinghouse seeks attorneys' fees of $18,000. Upon consideration of all these factors, fees will be allowed in the following amounts:

$2,250—Replevin and sale.

$1,500—Intervention in trial court and on appeal.

$1,500—Bankruptcy Court adequate protection action.

$2,000—State court action against Hanson (default judgment).

$2,500—Bankruptcy Court interpleader action.

The costs enumerated in Foster's affidavit (Westinghouse's Exhibit No. 5) include the totals of $3,030 and $1,578 shown on Westinghouse's Exhibit No. 6, although no dates are given on either exhibit. There are, additionally, plane fare, rental car, expert witness fee, court reporter, and repos-

session costs listed on Westinghouse's Exhibit No. 6. Certain of the items listed have insufficient information to determine whether they were necessary or related expenses, such as "George Black/mileage" and others will be disallowed because the court concludes that there is no reason for them to be allocated as an expense against Hanson. All items for photocopies, telephone, postage, car rental, plane fare and hotel will be disallowed.

■ Ms. Williams testified that costs connected with the sale of the second dragline, in the amount of $1,937, were deducted prior to the application of net proceeds of $14,062 against the Hanson debt. She also testified that there were "repossession costs" of $1,600, which amount is listed on Westinghouse's Exhibit No. 6. This does not provide the court sufficient information to determine that the $1,600 of costs are allowable, and since Westinghouse already deducted the costs of sale, the $1,600 item will be disallowed. For the same reason, the cost of advertising in the Miami Herald the notice of sale, for $321.76, (listed on Westinghouse's Exhibit No. 5) will be disallowed, because Ms. Williams testified that it related to the sale of the dragline.

The costs from Westinghouse's Exhibit No. 5 which will be allowed are itemized below:

| | |
|---|---|
| Clerk Circuit Court/filing fee | $ 30.00 |
| Clerk Circuit Court/bond approval fee | 5.00 |
| Sheriff, Broward Co./service | 12.00 |
| Sheriff, Dade Co./service | 7.50 |
| Sheriff, St. Lucie Co./service | 7.50 |
| Sheriff, Broward Co./service | 24.00 |
| Bond premium | 1,700.00 |
| Clerk Circuit Court—appeal fee | 12.00 |
| Clerk District Court | 50.00 |
| Clerk Circuit Court, Broward Co./filing | 44.00 |
| Sheriff Broward Co./service | 36.00 |
| Insurance Commissioner | 5.00 |
| Clerk Bankruptcy Court/filing fee | 77.00 |
| Old South Detectives | 325.00 |
| Evert Hanson/witness fee | 10.00 |
| Ron Prekup—service of Hanson Subpoena | 20.00 |
| Corp. Info. Services/UCC search | 14.00 |
| Broward Reporting | 184.15 |
| Sheriff, Broward Co./docket execution | 10.00 |
| Clerk/Broward—record Final Judgment | 7.00 |
| Clerk/certified copy of Final Judgment | 3.00 |
| Corp. Info Services—UCC search | 22.50 |
| Clerk Circuit Court/certified copies | 7.00 |
| Tim Wesloski/witness fee & mileage | 52.25 |
| Clerk/certified copy | 2.00 |
| U. S. Marshal/service of subpoena | 5.60 |
| Bankruptcy Court/copies of opinion | 5.50 |

The costs on Westinghouse's Exhibit No. 6 which are allowed are expert witness fees of $350 and court reporter expenses of $169.92.

On the basis of the court's findings, attorneys' fees totaling $9,750 and costs totaling $2,678 will be included in the Westinghouse lien. Westinghouse had calculated the total debt, to the date of the last hearing, as $29,852.74. Subtracting from that figure $8,250 in fees and $3,724 in costs (from both Exhibits Nos. 5 and 6 of Westinghouse) which Westinghouse included but the court is disallowing, the amount of the debt on the date of the last hearing was $17,878.74. Interest for the period November 3—December 31, 1981 at ten percent is $289, making the total amount of Westinghouse's lien $18,167.74.

Under any theory, Casteel's charging lien would amount to more than the balance remaining in the registry of the court. Therefore the court does not determine the exact, full amount he would otherwise be entitled to. This is without prejudice to a later determination of the extent of Casteel's unsecured claim if such a determination is necessary.

Maryland Casualty has sought attorneys' fees and costs. It has shown no basis and the court knows no basis of an award of attorneys' fees. No evidence was presented as to either fees or costs. Therefore the court will award Maryland Casualty Com-

pany costs of $60 for the interpleader filing fee.

Pursuant to B.R. 921(a), a separate Final Judgment incorporating these Findings and Conclusions is being entered this date.

### FINAL JUDGMENT

This cause came before the court on the complaint in interpleader of Maryland Casualty Company and the cross-claim of Westinghouse Credit Corporation. Preliminary Findings and Conclusions were entered on October 19, 1981 following the original trial of this matter, 15 B.R. 79, Bkrtcy. and Findings and Conclusions are being entered this date, following the further hearing which was set by the court. These Findings and Conclusions are incorporated herein.

The court finds that in connection with Policy # CM–69655267 issued by Maryland Casualty Company for the bulldozer described as one (1) used 1974 Caterpillar D–5 Tractor, Serial No. 96J 4443, ROPS, Power Shift, All Guards, Draw Bar, the lien of Westinghouse Credit Corporation has a first priority on the proceeds, and the attorneys' charging lien of Cabot, Wenkstern & Casteel has priority over the trustee.

The total amount of the Westinghouse lien is $18,167.74, and it is entitled to be paid that full amount. The lien of Cabot, Wenkstern & Casteel is no less than the remaining balance of the proceeds. Maryland Casualty Company will be awarded $60 in costs. It is, therefore,

ORDERED and ADJUDGED that the Clerk of this Court shall disburse to Westinghouse Credit Corporation, c/o James E. Foster, Esquire, 170 East Washington Street, Orlando, Florida 32801, the sum of $18,713.19; to Cabot, Wenkstern & Casteel, 2190 S.E. 17th Street, Suite 225, Fort Lauderdale, Florida 33316, the sum of $8,500; and to Maryland Casualty Company, c/o Paul Regensdorf, Esquire, Post Office Drawer 7028, Fort Lauderdale, Florida 33338, the sum of $60. Interest, if any, earned on the funds in the registry of the court shall be paid to the United States government.

The interpleader sought by Maryland Casualty Company is granted, and Maryland Casualty Company be, and it is hereby, discharged from any further liability to or claims by Westinghouse Credit Corporation, in connection with Policy # CM–69655267.

The trustee is directed to execute a satisfaction of all judgments rendered in favor of Hanson Dredging, Inc., and against Maryland Casualty Company and United States Fidelity & Guaranty Co. in the action styled "*Hanson Dredging, Inc., a Florida corporation, Plaintiff vs. Maryland Casualty Company, Defendant,*" in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. 76–10806, within twenty-one (21) days of the date of this Final Judgment.

The court retains jurisdiction of this cause for the purpose of entering such other and further orders as may be necessary to effectuate the intent of this Final Judgment.