In re Glenn S. DIXON, Debtor.

Glenn S. DIXON, Plaintiff,

v.

**FLORIDA ASSET FINANCING CORPORATION,**
Defendant.

Bankruptcy No. 7–97–01643–HPA–11.
Adversary No. 7–97–00102.

United States Bankruptcy Court,
W.D. Virginia,
Abingdon Division.

June 19, 1998.

A. Carter Magee, Jr., Magee, Foster, Goldstein & Sayers, Roanoke, VA, for Debtor/Plaintiff.

Curtis G. Manchester, Hazel & Thomas, Richmond, VA, for Florida Asset Financing Corporation/Defendant.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

Before the Court is an Application for interest, reasonable attorney's fees, and expenses, pursuant to 11 U.S.C. § 506(b), filed by Creditor/Florida Asset Financing Corporation ("Florida Asset"). The application seeks an allowance of 36% interest on the promissory note executed by Debtor's corporation, plus $30,722.00 in attorney's fees, $1,793.72 as expenses, and $925.00 foreclosure costs. The Debtor does not contest that Florida Asset is substantially oversecured and that the amount requested for foreclosure costs should be allowed. There are two issues before the Court. The first is whether 36 % interest is allowable under § 506(b). The second is whether the amount requested for attorney's fees and expenses is reasonable. Pursuant to the standards outlined by the Fourth Circuit Court of Appeals, the Court reviews the facts and circumstances surrounding the history of this case.

The relevant facts are as follows: This Chapter 11 Debtor, Glenn Dixon, owned Dixon Development Group, Inc. ("DDG") and executed a promissory note dated March 5, 1996, payable to Florida Asset in the principal amount of $150,000.00 with the balance on the date of the Petition of $161,919.19, including accrued interest. The Debtor guaranteed the obligations of DDG under the note pursuant to a guaranty agreement dated March 7, 1996. Interest accrued on the loan at 18% per annum with a late charge of 5% of the monthly payment. Upon default, a 36% interest rate would be charged on any principal, interest, and other sum payable, as well as cost and expenses, and attorney's fees involved in the collection of indebtedness or enforcement of the note. Debtor did not waive presentment, notice of dishonor, notice of demand, protest, or notice of nonpayment. In January, 1997, DDG defaulted under the terms of the Note. Debtor attempted a forbearance agreement; but under the terms of the note, Florida Asset transferred Debtor's stock interest in Dixon Lumber Company to Florida Asset. Florida Asset also began foreclosure proceedings on certain real estate thereby causing the filing of the Chapter 11 Petition in this Court on April 30, 1997, to stay the proceedings.

During the pendency of the case, the Debtor has liquidated certain real property of the estate and borrowed money on a secured basis from Dixon Lumber to pay Florida Asset the entire amount of the principal, the non-default interest, and late charges due under the Note and, thereby, has cured the default that existed under the terms of the Note. The only remaining claim by Florida Asset is for attorney's fees, interest of 36%, and foreclosure costs and fees. The Debtor does not contest Florida Asset's right to the foreclosure costs. Florida Asset filed a proof of claim, claiming interest on all loan amounts due at 36% to which the Debtors objected.

As an initial matter, the Court notes that the Bankruptcy Code generally is to be liberally construed in favor of the debtor. *See Williams v. USF & G*, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *Roberts v.*

*W.P. Ford & Son, Inc.*, 169 F.2d 151, 152 (4th Cir.1948)(*citing Johnston v. Johnston*, 63 F.2d 24, 26 (4th Cir.1933) and *Lockhart v. Edel*, 23 F.2d 912, 913 (4th Cir.1928)). This universally recognized principle serves to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (citations omitted). This same "honest but unfortunate debtor" is thus provided with "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 764, 765 (1991); *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 29 L.Ed.2d 233, 241 (1971); *Local Loan Co. v. Hunt*, 292 U.S. at 244, 54 S.Ct. 695; *Johnston v. Johnston*, 63 F.2d, at 26; *Royal Indemnity Co. v. Cooper*, 26 F.2d 585, 587 (4th Cir.1928).

This Court, upon trial of this matter, heard the evidence including the testimony of the witnesses. It observed the candor, demeanor, truthfulness, and forthright testimony of witnesses as well as their credibility and makes the findings and conclusions herein.

■ As herein stated, the Debtor has paid the entire amount of the principal, plus 18% interest, plus 5% late charges due under the note to Florida Asset. In the last four years, the prime interest rate has been approximately 8% and this Debtor has already paid this Creditor 18%. The 36% is significantly higher than the pre-default rate and there is no evidence before the Court that justifies the exorbitant amount. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (requires analysis of default interest rates based on facts and circumstances of each case). In the case of *In re Hollstrom*, 133 B.R. 535 (Bankr.D.Colo.1991), the court held that the creditor's request for default interest of 36% was too high based on the fact that there was no showing that the default rate was conventional, reasonable, or the standard in the industry. The Debtor presented uncontroverted evidence of testimony from Howard Beck, Esq., a local attorney knowledgeable in such matters, testifying that the default rate is entirely unconventional, unreasonable, and outside any standard in the lending industry. (Tr. 39–40).

Although the 36% is labeled interest, it is more in the nature of a penalty and punitive. Parties to a contract may not insulate a "charge" from scrutiny by affixing the "interest" label to it. *In re Kalian*, 178 B.R. 308, 313 (Bankr.D.R.I.1995). Florida has introduced no evidence to support its claim for the exorbitant default rate, nor shown it to be commercially reasonable in the industry. In light of the foregoing, the Court finds the interest rate is excessive and should be reduced to the 18% heretofore paid by the Debtor.

■ The second issue before the Court is the reasonableness of the attorney's fees requested by Florida Asset. The Debtor concedes that Florida Asset is substantially oversecured and pursuant to the Note and § 506(b), is entitled to reasonable attorney's fees and costs. The law applicable to fixing attorney's fees is generally viewed and considered in light of the Fourth Circuit Court of Appeals' decision in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.1978). There the Fourth Circuit adopted the standard of the Fifth Circuit in the case of *Johnson v. Georgia Highway Express*, 488 F.2d 714 (1974). The opinion adopts a 12–point standard for fixing fees as set forth therein. The court stated that it is well established that the allowance of attorney's fees " 'is within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered.' " *Lea v. Cone Mills Corp.*, 467 F.2d 277, 279 (4th Cir.1972), *quoting United States v. Anglin & Stevenson*, 145 F.2d 622, 630 (10th Cir.1944) *cert. denied*, 324 U.S. 844, 65 S.Ct. 678, 89 L.Ed. 1405.

The *Johnson* citation in the *Barber v. Kimbrell's, Inc.*, case includes 12 elements to be considered as follows:

These include (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the

customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorney's fees awards in similar cases.

Debtor filed the Chapter 11 Petition in an effort to stop foreclosure proceedings on certain real property. From the hearings at the very beginning of this case between these parties, the evidence before this Court was that Florida Asset was very substantially oversecured and adequately protected by its collateral. Most of the proceedings in this case, whereby Florida Asset incurred attorney's fees and expenses, were totally unnecessary and unreasonable.

When determining such reasonableness, the Court must not consider only the hours expended. *In re Harman Supermarket, Inc.,* 44 B.R. 918 (Bankr.1984). The burden of proof to show entitlement to the fees is on Florida Asset. *In re Leventhal & Co.,* 19 F.3d 1174, 1177 (7th Cir.1994); *In re Pettibone,* 74 B.R. 293 (Bankr.N.D.Ill.1987). Such burden must not be taken lightly. *Pettibone* at 299. Applying factors one and three, set forth in *Barber,* the Court should consider the time and labor necessarily expended and the skill required to properly perform the legal services rendered. Florida's application states that more than 214 hours were billed for attorney's fees. The attorney's hourly rate ranges from $185.00 to $140.00 per hour. Although the paralegal hourly rate is approximately $75.00, only 1.9 hours were billed for paralegal services. The remaining 212 hours were billed at either $185.00 or $140.00 per hour. In reviewing the Application, it appears that there are several instances where the amount of skill necessary to perform the service could have been completed by a paralegal. The Court is unable to find the existence of complex issues or the necessity for the unreasonable hours claimed to have been expended.

A careful review of the Application shows also that there are excessive charges toward travel time in appearances in court in Abingdon, Virginia, from Richmond. The application shows over fourteen (14) hours of travel by non-local counsel, even though they could have obtained local counsel to appear in some of these matters. In the case of *In re Hanson Dredging, Inc.,* 18 B.R. 735 (Bankr. S.D.Fla.1982), the court held that attorney travel expenses were disallowed where counsel could have used local counsel.

Additionally, there are charges for interoffice conferences that totally lack adequate description. The Court is unable to determine the need for or where the discussions took place or the topic of conversation other than the "status" of the case. *See In re Saint Joseph's Hospital,* 102 B.R. 416 (Bankr.E.D.Pa.1989) (holding that counsel was not entitled to compensation for inordinate amount of time spent in interoffice communications and inadequately described services.) *See also, In re Colorado–Ute Elec. Ass'n., Inc.,* 132 B.R. 174 (Bankr.D.Colo. 1991).

Factor eight of *Barber* examines the amount in controversy and the results obtained. In this instance, the amount in controversy was approximately $161,919.19. In the initial hearings before this Court, it was determined that this Creditor was substantially oversecured and totally and adequately protected from the inception of this case. This was correctly found and so determined since the Debtor has essentially now cured and paid the principal amount of the loan, plus 18% interest, plus 5% late charges.

Florida Asset has not met its burden of proving that $30,722.00 in attorney's fees is reasonable. There is nothing in the history of this case that reflects novel or difficult issues or circumstance requiring the expenditure of time that would have contributed to such high attorney's fees. In light of the foregoing and in the absence of any evidence supporting the amount requested, this Court finds and concludes that a reasonable fee for this Creditor is $7,500.00 and one-half of the expense is allowed of the amount requested, which is $896.86; that any sums in excess of these allowances shall be the proper respon-

sibility and expense of Florida Asset. An appropriate Order will be entered.