**In re AIR VERMONT, INC., North Atlantic Airlines, Inc.**

**Bankruptcy Nos. 84–19, 84–17.**

United States Bankruptcy Court, D. Vermont.

Sept. 21, 1984.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The matter is before the court on the following applications for allowances:

(1) Application of Joseph C. Palmisano, Esquire, for the Allowance of Interim Compensation in the sum of $43,-521.00 and Expenses of $5,511.94;

(2) Application of Lewis A. Sassoon, Esquire, Attorney for Creditors' Committee, for the Allowance of Compensation in the sum of $5,387.50;

(3) Application of Briggs, Keyes Co., Certified Public Accountants, for the Allowance of Compensation of $12,-003.75 and Expenses of $142.40;

(4) Application of VCL Partners, for the Allowance of $188,587.47, together with the further sum of $34,950.37 for Reimbursement of Expenses of Administration plus a management fee of $30,000.00 through May 31, 1984, with the management fee accruing at $250.00 per day;

(5) Application of Gene R. Kazlow for Interim Administrative Expenses of $8,256.25.

An objection had been interposed by Gene R. Kazlow to the application of VCL Partners and some question had been raised as to the amount to be allowed for Briggs, Keyes Co., Certified Public Accountants. However, at the hearing an agreement was reached as to these applications, pursuant to which a stipulation was filed on September 12, 1984 which is being considered by the court and, in all likelihood, it will be approved. This leaves for determination the applications of Joseph C. Palmisano, Esquire, and Lewis A. Sassoon, Esquire, as attorneys for the debtor and for the creditors' committee, respectively, as well as the application of Gene R. Kazlow. These applications are being considered in the light of the following BACKGROUND:

The debtor, Air Vermont, Inc., commenced business in September 1981, as a commuter air line operation from the International Airport in South Burlington, Vermont to various points mostly in the northeast. It suffered the growing pains of over-expansion at a rapid rate to the point that it started having financial difficulty which necessitated the filing of a petition for relief under chapter 11 of the Bankruptcy Code on January 31, 1984.

On the same day it filed an Emergency Motion for Authority to enter into an Interim Secured Financing Agreement with certain lenders known as VCL Partners to incur debt with superior priority over other administrative expenses and senior to existing liens including that of the Internal Revenue Service. This motion recited that VCL Partners were willing to lend the debtor on an interim basis, pending negotiations for a long term financing agreement, immediately $100,000.00 and up to $200,000.00 maximum on terms and conditions set forth in an agreement between the debtor and VCL Partners as lenders. The motion was granted and VCL Partners assumed the operation of the debtor which was continued for a period of one month. At the end of the period VCL Partners came to the conclusion that the debtor could not be rehabilitated and closed down the operation but not until it had incurred claimed expenses of $188,587.47 plus additional administrative expenses of $34,950.37 and a management fee of $30,000.00. The stipulation filed indicates that all of these claims of VCL Partners have been settled for $151,000.00 and that the allowance requested by the accountants has been reduced to $6,000.00.

After VCL Partners terminated the operation of the airline the attorney for the debtor suggested that it would be most feasible for the benefit of the creditors that the chapter 11 proceeding continue as a liquidation and, accordingly, filed a disclosure statement and a liquidation plan. He subsequently requested the court to hold in abeyance a hearing on the liquidation plan since there were negotiations in progress for the possible resumption of management of the debtor by the principals who had operated the airline prior to the filing of the chapter 11 petition. At this point it was clear that nothing had been accomplished other than the running up of substantial administrative expenses.

It is in this posture that the court must consider the reasonableness of the amounts requested by the applicants. Section 331 of the Bankruptcy Code states that a debtor's attorney or any professional may apply to the court not more than once every 120 days after an order for relief in the case for such compensation for services rendered before the date of such application or reimbursement for expenses. Under this section the court may approve such compensation and reimbursement for expenses so that the applicant may not be required to wait until the end of the case, which in

some instances, may be for years. This court has had some reservations about passing upon interim compensation early in the case for the reason that it is difficult at that stage to determine what constitutes a reasonable allowance since success in a chapter 11 case is probably the most determining factor. However, the attorney for the debtor has requested that the court pass upon the amount that should be allowed to him for his services so that he can make a judgment as to whether he wishes to continue as attorney for the debtor. Accordingly, the court is making a determination of the three pending applications for allowances.

## AS TO THE APPLICATION OF JOSEPH C. PALMISANO, ESQUIRE, FOR INTERIM COMPENSATION AND EXPENSES

The attorney for the debtor has filed an application for the allowance of $43,521.00 for compensation for services and $5,511.94 for reimbursement for expenses. His services cover a period from January 29, 1984 through May 25, 1984, a total of 397.75 hours at $100.00 per hour or a request of $39,775.00. In addition, he is claiming compensation for the services of an associate for the period from January 31, 1984 through May 14, 1984, a total of 72.25 hours at $65.00 a hour or a request for him of $4,696.25. The total amount of compensation requested in the itemized schedule is $44,471.25, but for some reason the attorney has reduced this request in his application to $43,521.00.

## DISCUSSION

Under § 330 of the Bankruptcy Code the Court may allow a professional person or the debtor's attorney reasonable compensation for actual, necessary services rendered by him based on the time, the nature, the extent, and value of such services, and the cost of comparable services other than in a case under title 11 of the Code; and reimbursement for actual, necessary expenses.

The criteria for the allowance of reasonable compensation are recited in *Johnson* *v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5 Cir.1974) as follows:

"(1) the time and labor required;

(2) the novelty and difficulty or the questions presented by the case;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of a case;

(5) the customary fee for similar work in the community;

(6) whether the fee is fixed or contingent;

(7) time pressures imposed by the client or the circumstances;

(8) the amount involved and results obtained as a result of the attorneys' services;

(9) the experience, reputation and ability of the attorneys;

(10) the 'undesireability' of the case;

(11) the nature and length of the professional relationship with the client;

(12) awards in similar cases."

In a chapter 11 case this court is inclined to give more weight to the novelty and difficulty of the questions presented, the skill with which the services were performed, the amount involved and the result obtained as a result of the attorney's service. And if there is to be one dominant factor it is "success."

The instant case is somewhat out of the ordinary in that it involves the operation of an airline with unusual ramifications arising in the determination of perfected security interests especially since the filing requirements are controlled by the Federal Aviation Act rather than the Uniform Commercial Code.

The Court also recognizes that the applicant has had many years of experience in bankruptcy matters but it does have considerable reservation that he performed his legal services in this case with his unusual skill. He had himself made this concession in his statement on page 3 of his applicant as follows:

"The applicant does not feel he has performed to the level that he should, and therefore, has not requested the premium hourly rate that he normally would charge."

It is difficult for the Court to comprehend what the applicant means by the "premium hourly rate." The usual charge for legal services in bankruptcy matters as well as for comparable services in non-bankruptcy proceedings in this area ranges from $75.00 to $100.00 an hour. The applicant has charged what the Court considers the maximum.

■ The court has made a careful examination of the itemization of the services rendered by the applicant and this reveals that the vast majority of them were of a routine nature such as the preparation of pleadings, conferences, attendance at routine hearings, negotiations, correspondence, telephone conversations and travel. Charges for such routine services are generally held compensable at a much lower rate than the maximum charged by the attorney for the debtor. And this rule obtains irrespective of the experience and competency of the attorney who performed them. *In Re Hamilton Hardware Co., Inc.* (Bankrtcy.E.D.Mich.1981) 11 B.R. 326; *In Re Underground Utilities Construction Co.* (Bankrtcy.S.D.Fla.1981) 13 B.R. 735; *In Re International Coins & Currency, Inc.* (Bankrtcy.D.Vt.1982) 22 B.R. 127, 130.

■ With reference to routine and ministerial services the Court notes that there is a charge of 30 plus hours in the preparation and rewriting of schedules for which the applicant seeks compensation of about $3,000.00. The nature of these services is clearly clerical most of which should be rendered by an accountant warranting a much smaller fee. *In Re Olen* (Bankrcy.E.D.Mich.1981) 5 C.B.C.2d 944, 947.

The Court recognizes that the applicant did in fact or was in the process of preparing and filing complaints in adversary proceedings for the avoidance of preferences and the recovery of substantial sums of money. However, none of these as of the date of his filing of the application for compensation resulted in any recovery for the benefit of the debtor's estate. As a matter of fact some of the action taken by the attorney for the debtor has been detrimental to the estate. For example, in a motion instituted by Comair, Inc. for abandonment of aircraft the applicant conceded that there was no equity for the benefit of the estate and stipulated in writing for such abandonment. Gene R. Kazlow, an officer of the debtor and an attorney, resisted the motion and, after a hearing, the Court determined that there was equity in the aircraft. In addition the Court, in examining the security documents in anticipation of the preparation of its memorandum and order discovered that Comair, Inc. did not have a perfected security interest in one of the planes with a valuation of over $100,000.00. In fairness to the applicant it is pointed out that the controversy is on appeal in the U.S. District Court.

In another proceeding the applicant as attorney for the debtor filed an application to reject two executory contracts for the purchase of aircraft from one Ralph Cutillo and the Court, after hearing, determined that Cutillo did not have a perfected security interest in the aircraft and denied the debtor's motion to reject the contracts.

The applicant spent much time and effort in a proceeding to avoid an alleged preference in favor of Pioneer Commercial Funding Corp. for over $100,000.00. After hearing the Court decided against the debtor and the matter is on appeal.

The Court is reluctant to point out the shortcomings of the applicant in rendering legal services to the debtor but at the same time, in doing so, it is carrying out its obligation in fixing a reasonable fee for such services. *See In Re Erewhon, Inc.* (Bankrtcy.D.Mass.1982) 21 B.R. 79, 86:

"The Court is charged with the responsibility to make an independent determination of the reasonable necessity of the services and the appropriate charges for such services as they apply in general

terms but to the specific matters before the Court."

■ The Court also recognizes that the attorney for the debtor may be successful in matters on appeal and that the prosecution of complaints in adversary proceedings may, in the future, result in moneys coming into the estate. If such occurs, through the efforts of the applicant, the court will not hesitate to grant him adequate and reasonable compensation. However, as of now, the Court can make a determination on the basis of the actual and necessary services rendered during the interim period. In doing so the Court can consider its own knowledge of the case. *See In Re TMT Trailer Ferry, Inc.*, 577 F.2d 1296, 1304 (5th Cir.1978):

"the court, either trial or appellant, is itself an expert on the question (of attorney's fees) and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid or testimony of witnesses as to value."

■ After carefully reviewing the applicant's application, the schedule of time spent, the nature of the services performed and the results accomplished, the Court concludes that $21,000.00 is a reasonable fee for his services.

In making this allowance the court is cognizant of the applicant's allegation in his petition that, because of the size of the case, he has had to refuse other business and.has had to be available daily and, that he may continue to be, so that he will be unable to undertake many other major matters until this case is further advanced. The court realizes that the applicant has spent a considerable amount of time on this case but it also notes that the attorney for the debtor is on the panel of trustees in this district and, as far as it knows, he has accepted all assignments made to him as trustee by the Clerk and has been, during this interim period, involved in large assets cases.

The applicant also states that the debtor has assets of between $500,000.00 and $1,500,000.00 and that the court has determined that certain assets would be free of any liens with a value of about $500,000.00 to $700,000.00. The court considers these statements rather exaggerated and, in addition, any avoidance of liens during the interim period could not be attributed to the efforts of the applicant.

The schedules do list the assets at $2,112,725.30 but their value has been grossly overstated. At the outset the debtor did have cash listed at $70,000.00 but most of this has been used up in operating expenses while at the same time the administrative expenses for which allowances are now being sought have been incurred. At the same time the debtor at the time of filing had unpaid wages of $56,671.52, deposits owed of $61,650.89 and unsecured claims of $1,354,436.84. In sum the picture was rather bleak at the outset and it continued to deteriorate rapidly during the operation of the business under chapter 11.

■ The debtor also seeks reimbursement of $5,511.94 in expenses of which the sum of $2,279.52 constitutes telephone charges not itemized. The court is willing to waive itemization since it feels that this sum is for toll calls which were actually made by the applicant. Therefore, expenses of $5,511.94 are approved.

## AS TO APPLICATION OF GENE R. KAZLOW

■ This applicant seeks reimbursement of $8,256.25 for fees and expenses of his attorneys, Saxer, Anderson and Wolinsky, Esquires. They, in turn, filed a separate application for the same amount itemizing services from February 21, 1984 through June 26, 1984. The request for reimbursement is apparently predicated on § 503(b)(3)(D) of the Bankruptcy Code which provides that actual necessary expenses may be allowed to a creditor—an equity security holder in making a substantial contribution in a case under chapter 9 or 11 of this title.

Section 503 has previously been applied by this court and it did allow to an attorney

for the shareholders' committee compensation for such legal services as tended to foster and enhance, rather than to retard or interrupt the progress of reorganization under chapter 11. *In re Real Estate Investment Trust,* 26 B.R. 905 (Bankrcy.Vt. 1983).

In the instant case the applicant is a shareholder and a principal in the debtor corporation. He retained Douglas J. Wolinsky, Esquire, on a personal basis to represent him in these proceedings. For some reason or other he abdicated management of the airline operation before or soon after the chapter 11 proceeding was instituted. It was turned over to VCL Partners as a management team who conducted the business of the airline for about one month after the filing. At all times and even as of now the debtor is represented by Joseph C. Palmisano, Esquire. At one point a disagreement arose between Kazlow and VCL Partners. After operation ceased the debtor filed a disclosure and liquidation plan. Kazlow was adamant that the airline should be operated and could be reorganized. The legal services for which Kazlow seeks reimbursement are itemized in a schedule attached to one of the applications. They include the period from February 21, 1984 through June 26, 1984—a total of 109.25 hours at $75.00 an hour = $8,156.25. Out of pocket expenses sought are $100.00.

Most of the services rendered by Kazlow's attorney were for the benefit of Kazlow so that he could obtain control of the debtor. Management has since been returned to Kazlow under certain conditions and he has continued to retain Palmisano as attorney for the debtor. The latter has made charges for similar legal services for which Kazlow is seeking compensation. This has resulted in a duplication of effort and of charges. In fairness to Kazlow the court recognizes that he did in fact resist a petition of Comair, Inc. for abandonment of 4 airplanes after the attorney for the debtor had consented to abandonment. The court sustained his objection to abandonment as to 3 and allowed the application as to the fourth. This matter is now on ap-

peal before the U.S. District Court. The court also determined that Comair had an unperfected security interest in a Piper Chieftain airplane worth over $100,000.00 but this came about from the examination of the security documents introduced as exhibits by Comair rather than from an input by Kazlow.

Kazlow also resisted the application of the debtor to reject two executory contracts with one Ralph Cutillo which would have the effect of abandoning some aircraft. Likewise the court found that Cutillo did not have a perfected security interest in the airplanes. . This matter is also on appeal. In addition there is pending an application for relief from the automatic stay filed by a prior lienholder which, if successful, will greatly decrease the value of the legal services rendered in contesting the application to reject the Cutillo executory contracts.

In sum, the legal services rendered by Kazlow's attorney from February 21 through June 26, 1984 were substantially for his benefit, were duplications of those rendered by the attorney for the debtor and involved matters which are still pending with no assurance that they will ultimately be resolved in favor of the debtor. Under the circumstances the court concludes that Kazlow should be allowed $1,000.00 as reimbursement for legal services plus $100.00 for out of pocket expenses.

## AS TO ATTORNEY FOR CREDITORS' COMMITTEE

Lewis A. Sassoon, Esquire, as attorney for the creditors' committee has filed an application for interim compensation for the period April 3, 1984 through June 28, 1984 charging 23.25 hours for himself @ $130.00 per hour = $3,022.50 and 21.50 hours for a partner @ $110.00 per hour = $2,365.00—a total of $5,387.50.

The applicant is based in Boston, Mass. and the court is aware that these hourly rates are considered reasonable for that area as well as in other metropolitan com-

munities. However, this court has held that the reasonableness of the compensation requested should be determined in the light of the usual charges for legal services in the area or district in which they are rendered, *In re Sutherland* (Bankrcy.D.Vt. 1981) 4 C.B.C.2d 1580, 14 B.R. 55. See also *In Re Liberal Market, Inc.* (Bankrcy—S.D. Ohio 1982) 24 B.R. 653, 659.

The services rendered by the applicant were purely of a routine nature not requiring any special skill. They have not as of now produced any result beneficial to the creditors or the estate of the debtor. As a matter of fact the Court is under the impression that the Attorney for the Creditors' Committee has adopted a "wait and see" attitude. The average charge for legal services in bankruptcy matters in this district is $75.00 an hour but the Court is inclined to allow even less because of the nature of the services rendered. Accordingly, the Court approves $2,200.00 as a reasonable fee.

### ORDER

In view of the foregoing,

IT IS ORDERED:

1. Joseph C. Palmisano, Esquire, is allowed $21,000.00 for legal services and $5,511.94 as reimbursement for expenses.

2. Gene R. Kazlow, Esquire, is allowed $1,100.00 as reimbursement for legal services and expenses.

3. Lewis A. Sassoon, Esquire, is allowed $2,200.00 as compensation for services as attorney for the creditors' committee.

4. The Stipulation for Payment of the allowance to VCL Partners and to Briggs, Keyes Co. is being approved by separate order.

5. In the event that payments are made to the applicants under this order and it is later determined that there are insufficient funds with which to pay all administration expenses incurred in this Chapter 11 proceeding or to pay all of the administration expenses which may occur in a Chapter 7 liquidation if this case is converted to Chapter 7, then each applicant who receives

payment shall be obliged to pay over to the Debtor or to the trustee such pro-rata share of such sum received by him under this Order as is chargeable to him under the applicable provisions of the Bankruptcy Code.