**In re RUSSELL TRANSFER, INC., Debtor.**

**Bankruptcy No. 7–85–00364.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

April 21, 1986.

Lawrence & Lumsden, Roanoke, Va., for debtor.

Bird, Kinder & Huffman, Roanoke, Va., for Berkeley H. Riley.

Parvin & Wilson, Roanoke, Va., for Creditors' Committee.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

Before the Court is the application of Berkeley H. Riley requesting the Court to determine and order administrative expenses in the sum of $6,460.12.

Upon hearing, the Debtor objected primarily to the attorneys' fees paid to BIRD, KINDER & HUFFMAN in the amount of $2,588.00. Additionally, the Debtor contends that medical expenses paid for Riley's family during the pendency of the Chapter 11 case as self-insurer in the amount of $6,069.52 should be set off, as a result of which the Debtor claims that it owes nothing to Riley.

The issues arise out of prior agreements between the Debtor and Riley who, until May 21, 1984, served as Executive Vice-President, Secretary, and General Manager of the Debtor, as well as a one-third stockholder. On that date, an agreement was entered into between Riley and Bill B. Bumgarner following Bumgarner's acquisition of the remaining third share from a deceased partner-shareholder, giving him a majority stock position. In this agreement, Riley would resign his management offices but would remain a member of the Board of Directors. During the pendency of this Chapter 11, this Court ruled, on December 27, 1985, following hearing, that the written agreement between Riley and the Debtor gave Riley a vested interest which was required to be recognized and dealt with in the Debtor's Plan.

Following the December Order of the Court, the Debtor, having proposed and had confirmed a Plan of reorganization in which the assets were sold to a third party, a subsequent agreement was entered into between Riley and the purchaser, Continental Trucking Services, Inc. ("CTS"). In this agreement, certain matters were resolved, leaving open for determination by this Court administrative expenses arising out of and asserted by Riley.

The Plan of reorganization provided that the purchaser, CTS, would pay all administrative expenses arising out of the Chapter 11 case and, in addition, $50,000.00 to be distributed to the general creditors of the debtor corporation. Accordingly, the Debt-

or and CTS seek.to have the administrative expense applied for by Riley determined to be a general creditor claim which would share with other general creditors in the $50,000.00 fund and thereby diminish the funds going to other general creditors.

The Court has reviewed the evidence and documentation relating to the claimed offset by the Debtor of the medical expenses and, from the evidence and documentation, it appears to the Court that despite the Debtor's self-insurer status, this medical expense coverage was a part of the contract and agreements and, therefore, the administrative expenses should not be diminished by any offset relating to medical expenses incurred during the pendency of the case.

The Court now comes to what is perceived to be the paramount question of attorneys' fees. This appears to be the primary objection of the Debtor to Riley's claimed administrative expenses. Although evidence was elicited on other items, they were within the framework and clearly administrative expenses. The evidence presented on the issue of attorneys' fees reflects that in January of 1985, following Riley's termination as an officer of the company in May of 1984, Bumgarner approached Riley who, as stated, remained a stockholder and Director, to pledge Riley's credit in the sum of $200,000.00 for the purpose of assisting the Debtor in hurdling a financial crisis with Gulf Oil Company, the supplier of fuel for its trucks. Gulf Oil would provide additional fuel oil credit if Riley would pledge to Colonial American National Bank $200,000.00 of his credit as requested so that Colonial American would issue to Gulf its letter of credit.

Riley, in his capacity as Director and in making a determination as to what would be in the best interests of himself and the debtor corporation, sought the advice of and incurred attorneys' fees to the firm of BIRD, KINDER & HUFFMAN, as set forth in the application.

Following consultation with Counsel and reviewing the financial affairs of the Debtor, Riley proposed certain conditions under which his credit would be pledged. Apparently, Bumgarner rejected the proposal and, shortly thereafter, engaged separate Counsel which, on April 2, 1985, filed this Chapter 11 case.

The Debtor's primary objection to the allowance of these fees to Riley is that they are not administrative expenses payable as such.

11 U.S.C. § 503 provides for the allowance and payment of administrative expenses in cases filed in this Court. The relative and primary portion of this statute applicable here is § 503(b)(3)(D), which provides as follows:

"After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under Section 502(f) of this Title, including— ...

(3) the actual, necessary expenses other than compensation and reimbursement specified in Paragraph (4) of this subsection incurred by— ...

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title [11 USCS § 1102], in making a substantial contribution in a case under chapter 9 or 11 or this title [11 USCS §§ 901, et seq., or 1101 et seq. ];"

The pertinent language which the Court must consider is the words "substantial contribution". The allowance for actual and necessary expenses incurred by creditors or other parties, if found to have made a substantial contribution, are compensable as administrative expenses. This provision does not require a finding that such contribution must lead to a successful confirmation of a Plan. 2 *Collier Bankruptcy Manual,* ¶ 503.13[5] at 503–39 (3d Ed.1985); S.Rep. No. 95–989, 95th Cong. 2d Sess., 66–7 (1978); U.S. Code & Admin.News 1978, p. 5787; 1 *Norton Bankr. L. & Prac.,* § 12.32; 9A *Am. Jur.2d, Bankruptcy,* § 622 (1980). In 3 *Collier on Bankruptcy,* ¶ 503.04[3][d], at 503–32 (15th Ed. 1985), it is stated:

"While courts may consider many factors going to proper compensation, the principal test would remain that of the benefit to the debtor's estate, the creditors, and to the extent relevant, the shareholders."

In 3 *Collier on Bankruptcy,* ¶ 503.-04[3][d] (15th Ed.1985), further at page 32, it is stated that, in construction of this statute, courts may give the broadest latitude in the interpretation of what constitutes substantial contribution. *See generally Leiman v. Guttman,* 336 U.S. 1, 69 S.Ct. 371, 93 L.Ed. 453 (1940). At page 33, *Collier* further states that it is impossible to lay down hard and fast rules to determine what is, in a given case, substantial contribution. *See also* 1 *Norton Bankr.L. & Prac.,* § 12.32.

In considering the application herein, this Court is unable to say that the advice sought and given to Riley, a Director and stockholder, by the attorneys shortly before filing the Chapter 11 was not a substantial contribution to what ultimately appears to be a successful Chapter 11 reorganization Plan. This Court notes that in many Chapter 11 cases, the timing of the filing of the Chapter 11 case is crucial. Many cases are filed after exhaustion of every possibility and then, unfortunately, when there is nothing to rehabilitate, as an alternative to liquidation.

It is noted that the Chapter 11 case was filed in this Court shortly after Riley, in effect, declined to grant the letter of credit. The filing of the Chapter 11 shortly thereafter at a time while the Debtor was fully operative as a going business may very well have been the catalyst for the acquisition by CTS resulting in the confirmed Plan. If that be the case, and from the evidence, this Court accordingly finds that the legal advice sought and obtained by Riley proved to be invaluable to the Debtor, although indirectly, in the filing, proposing, and having successfully confirmed the reorganization Plan herein.

Accordingly, it is

ADJUDGED and ORDERED

that the amount of the administrative expense claimed in the application be, and same is allowed in the amount claimed, without offset, which amount shall be treated as an administrative expense under the Plan and payable as such.

Further, no issue was raised nor evidence presented as to the lack of reasonableness of the fee applied for to be paid to BIRD, KINDER & HUFFMAN and, since the only issue was one of administrative expense, the Court assumes the amount to be, and same is accordingly adjudged reasonable without further hearing pursuant to *Rule* 2016.