**In re 9085 E. MINERAL OFFICE BUILDING, LTD., Debtor.**

**Bankruptcy No. 88–B–01199–A.**

United States Bankruptcy Court, D. Colorado.

Sept. 6, 1990.

Brett W. Martin, Gelt, Fleishman & Sterling, P.C., Denver, Colo., for debtor.

Leo M. Weiss, U.S. Trustee's Office, Denver, Colo., for U.S. Trustee.

Curt Todd, Haligman and Lottner, Englewood, Colo., for Travelers Ins. Co.

MEMORANDUM OPINION AND ORDER REGARDING APPLICATION BY HALIGMAN & LOTTNER, P.C. FOR INTERIM ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Application by Haligman & Lottner, P.C. for Interim Allowance of Compensation and Reimbursement of Expenses filed February 12, 1990 and the Objections thereto filed by the Acting United States Trustee on February 14, 1990 and the Debtor on February 27, 1990. Oral arguments were heard by this Court on July 23, 1990 at which time the matter was taken under advisement.

The central question before this Court is whether the attorneys who represented the major secured creditor of the Chapter 11 Debtor are entitled to compensation as a cost of administration pursuant to 11 U.S.C. §§ 503(b)(3)(D) and (b)(4). This Court concludes, for the reasons stated herein, that the applicant, Haligman & Lottner, P.C., is entitled to a limited amount of compensation for its efforts which resulted in a substantial contribution to the Chapter 11 case.

### I. *Background.*

On February 2, 1988, the Debtor filed a Petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. The Debtor, a Colorado limited partnership, developed, leased and managed a three-story office building located in the Panorama Office Park, Arapahoe County, Colorado ("Building"), which Building was the primary asset of the Debtor.

The Travelers Insurance Company ("Travelers") provided the capital necessary to construct the Building. In exchange, the Debtor[1] executed a promissory note in favor of Travelers dated April 25, 1985 in the original principal amount of $6,625,000.00. In conjunction with the promissory note, the Debtor executed various other security documents including a deed of trust, an assignment of rents and leases, a security agreement, and UCC–1 financing statements.

The Debtor alleges that, because of the deterioration of the leasing market, it became increasingly unable to meet its obligation under Travelers' promissory note and efforts were undertaken to restructure the debt. Sometime in August 1987, the Debtor borrowed $35,000.00 from three in-

---

**1.** The original maker of the promissory note was Larrick Office Building Partnership I, a Colorado general partnership organized on March 23, 1982 by Larrick Development Company (30% interest) and Larrick Corporation (70% interest). On March 1, 1986, the partnership was converted into a limited partnership by the name of Larrick Office Building Partnership I, Ltd. with ownership interests as follows:

| | |
|---|---|
| Larrick Development Company (general partner) | 15% |
| Larrick Corporation (general partner) | 35% |
| Hot Springs Geothermal Corporation (general partner) | 1% |
| Lorraine Grace (limited partner) | 49% |

The name of the limited partnership was changed to 9085 East Mineral Office Building, Ltd. on May 28, 1987. On June 30, 1987, Hot Springs Geothermal Corporation was made the sole general partner, Larrick Development Company reduced its interest to 1%, and Larrick Corporation surrendered its entire interest.

dividuals in order to make the Travelers' payment for that month. In exchange for the money, the Debtor gave each of the individuals a junior deed of trust on the Building. Settlement negotiations with Travelers failed, however, and no further payments were made on the promissory note.

Travelers obtained an Order from the Denver District Court on January 20, 1988 which appointed a receiver over the Building.[2] Immediately following the February 2, 1988 filing of the Debtor's bankruptcy Petition, Travelers filed a notice pursuant to 11 U.S.C. § 546(b) of the perfection of its security interest in the rents and profits of the Building on February 4, 1988.

According to the Debtor's bankruptcy Schedules, in addition to the debt to Travelers, the Debtor owed property taxes of $133,772.66, junior secured debt (to the three individuals) of $35,000.00, and unsecured debt, including trade creditors and security deposits collected, of $19,793.25.

Throughout this bankruptcy case, Travelers has been an understandably active participant. As Travelers' claim represents substantially all of the debt, Travelers' ef-

forts could be viewed as primarily self-serving. Notably, however, it was Travelers that succeeded in formulating a Plan of Reorganization which provided a full 100% payment of the junior secured claims, the security deposit claims, and the other unsecured claims in exchange for which Travelers would receive the Building in full satisfaction of its own claim.[3] The Plan proposed by Travelers, which included a compromise by Travelers of its own claim, provided a superior payout to all creditors and was confirmed by this Court on June 8, 1989 following the withdrawal of the Debtor's Plan.[4]

By the Application *sub judice,* counsel for Travelers requests allowance of interim compensation as an administrative expense pursuant to 11 U.S.C. §§ 503(b)(3)(D) and (b)(4).[5] Both the Acting United States Trustee and the Debtor object, alleging that Travelers participated in the case for the purpose of promoting its own self-interest and that no substantial contribution to the estate resulted therefrom.

## II. *Discussion.*

Section 503(b)(3)(D) of Title 11 of the United States Code provides as follows:

---

**2.** A foreclosure sale by the Arapahoe County Public Trustee was scheduled for March 16, 1988.

**3.** Under Travelers' Plan, the partners would be *the only impaired class and would receive pay-ment only in the event of surplus rents and profits remaining after payment of all other estate claims.* In the event of such surplus, the partners would share the surplus *pro rata.* Several creditors' claims and the partners' equity interests have not been paid pending the filing of objections by Travelers.

**4.** The "Debtor's Amended Plan of Reorganization" dated July 25, 1988 provided for a $3,500,-000.00 cash payment to Travelers and a mere 1% payout on all impaired claims. The junior secured creditors would retain their liens on the property in addition to any cash payment received.

**5.** Applicant also seeks compensation pursuant to 11 U.S.C. § 330(a). As applicant has not been employed as a professional person under either 11 U.S.C. § 327 or § 1103, that section is inapplicable to the present case.

The Bankruptcy Code does not generally speak in terms of the payment of claims, but in terms of "allowance." Even though 11 U.S.C.

§ 331 is the only section which specifically provides for interim payments or disbursements, this Court is not limited to those enumerated instances in awarding fees on an interim basis. "[T]he better view is that the determination of when administrative expenses are to be paid is within the discretion of the Court." *In re Kaiser Steel Corp.,* 74 B.R. 885, 891 (Bankr.D.Colo. 1987). The legislative history to 11 U.S.C. § 331 states as follows:

> The **only** effect of this section is to remove any doubt that officers of the estate may apply for, and the court may approve, compensation and reimbursement during the case, instead of being required to wait until the end of the case, which in some instances may be years. *The practice of interim compensation is followed in some courts today, but has been subject to some question.* This section explicitly authorizes it.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 330 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 42 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5828, 6287 (emphasis added). *See, In re Gherman,* 105 B.R. 714 (Bankr.S.D.Fla.1989). *In re Beck Rumbaugh Associates, Inc.,* 84 B.R. 369, 371 (E.D.Pa.1988) ("Section 503(b)(3)(D) authorizes interim fees...."); *In re Air Vermont, Inc.,* 43 B.R. 237, 242–243 (Bankr.D.Vt. 1984).

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) [6] of this title, including—

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, **in making a substantial contribution in a case under chapter 9 or 11 of this title;....**

11 U.S.C. § 503(b)(3)(D) (Emphasis added).

This Court must first determine whether or not Travelers' efforts resulted in a "substantial contribution." This inquiry is one of fact. *Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir. 1986); *Ex parte Roberts*, 93 B.R. 442, 444 (D.S.C.1988). Because Congress chose to use the undefined [7] term "substantial contribution," each application of this section to the facts of a particular case necessarily will suffer, to some degree, from imprecision. *Matter of Baldwin–United Corp.*, 79 B.R. 321, 338 (Bankr.S.D.Ohio 1987).[8] "Ultimately, what constitutes a substantial contribution must be left to the informed discretion of the Court based upon the time sheets and other relevant evidence." *Id.* at 338.[9]

■ The burden of proof is on an applicant to establish its entitlement to an award under 11 U.S.C. § 503(b) by demonstrating by a preponderance of the evidence that a "substantial contribution" was made. *See, In re Buttes Gas & Oil Co.*, 112 B.R. 191, 193 (Bankr.S.D.Tex.1989) (cases cited); *In re U.S. Lines, Inc.*, 103 B.R. 427, 429 (Bankr.S.D.N.Y.1989); *In re Lister*, 846 F.2d 55, 57 (10th Cir.1988); *Matter of Patch Graphics*, 58 B.R. 743, 746 (Bankr.W.D.Wis.1986). The burden of persuasion remains with the applicant; however, the burden of production shifts to the objector(s) after the applicant has presented a *prima facie* case. *Buttes Gas & Oil, supra* at 193 (case cited).

■ Something more than mere conclusory self-serving statements regarding one's involvement in a case which allegedly resulted in a "substantial contribution" must be presented to the Court before compensation can be allowed. *Id.* at 196; *U.S. Lines, supra* at 430. "Corroborating testimony by a disinterested party attesting to a claimant's instrumental acts has proven to be a decisive factor in awarding compensation to activities which otherwise might not constitute a 'substantial contribution.'"

---

6. Section 502(f) of Title 11 of the United States Code deals with claims arising in the ordinary course of a debtor's business after the commencement of an involuntary case but before the earlier of the appointment of a trustee or the order for relief. The provisions of this section are not applicable to the present case.

7. Although not defined by the Code, the legislative history supporting the 1978 Bankruptcy Reform Act indicates as follows:

The phrase 'substantial contribution in the case' is derived from Bankruptcy Act §§ 242 and 243 ... [and] does not require a contribution that leads to confirmation of a plan, for in many cases, it will be a substantial contribution if the person involved uncovers facts that would lead to a denial of confirmation, such as fraud in connection with the case. S.Rep. No. 989, 95th Cong., 2nd Sess. 66–67 (1978). *See also,* HR Rep. No. 595, 95th Cong., 1st Sess. 355 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5852, 5853, 6311.

8. *But see, In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557, 565 (Bankr.D.Utah 1985) (the court found the same language "relatively clear").

9. Judge John P. Moore, formerly of this Court, agreed.

[I]t is clear Congress has left to the discretion of the Court, on a case by case basis, to determine whether an individual creditor is entitled to compensation on the basis of that creditor's own role in the case ... suffice that § 503(b)(3)(D) compensation is grounded upon the limitation that the expenses be 'actual' and 'necessary,' and leave each application to be determined upon its own merits. Hence, there will always remain in each case questions of whether the services of any applicant creditor have been 'substantial' and whether the expenses incurred in that service have been 'actual' and 'necessary.'
*In re Grynberg,* 19 B.R. 621, 623 (Bankr.D.Colo. 1982). *See also,* 3 *Collier on Bankruptcy,* ¶ 503.04[3][d] (15th Ed.1990).

*Id.* at 430. "Absent, or in addition to, such corroborating testimony, a court's own first-hand observance of the services provided may be a sufficient basis on which to find a 'substantial contribution.' " *Id.* at 430 (cases cited). *See also, In re General Oil Distributors, Inc.,* 51 B.R. 794, 807 (Bankr.E.D.N.Y.1985) (because of applicant's "concentration of effort in nonlitigation activities, the court has little firsthand knowledge of their efforts"); *In re Penn–Dixie Industries, Inc.,* 18 B.R. 834, 838 (Bankr.S.D.N.Y.1982) (after recognizing counsel's "vital and highly visible role" and "active participation and contribution to the outcome of the case," the court states that it is "cognizant of the extent and value of [counsel's] services" in the case). Likewise, this Court has had the opportunity to observe and become quite familiar with the role played by applicant in this case. The absence of corroborating testimony is, therefore, not fatal to the instant application for compensation.

This Court is mindful of the balance required between the need to interpret the provisions of 11 U.S.C. § 503 broadly enough to effectuate its goal of stimulating, encouraging, and promoting meaningful creditor participation in reorganization proceedings and the need to keep administrative expenses to a minimum.[10]

 This Court also shares the concerns recently expressed by Judge Patricia A. Clark of this District regarding the "potential ramifications of opening the door to § 503(b)(3) claims too far." *In re Standard Metals Corp.,* 105 B.R. 625, 630 (Bankr.D.Colo.1989). Consequently, this Court agrees with those cases which have held that compensation must be strictly limited to those cases in which *unusual* creditor actions have led to *demonstrated* benefits to either the creditors as a whole, the debtor or the estate. *See, e.g. Buttes Gas & Oil, supra* at 196; *Baldwin–United, supra* at 340.

> Compensation cannot be freely given to all creditors who take an active role in bankruptcy proceedings. Compensation must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate. [Cite omitted.] Such involvement takes the form of constructive contributions in key reorganizational aspects, when but for the role of the creditor, the movement towards final reorganization would have been substantially diminished. The integrity of § 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to significant and tangible benefits to the creditors, debtor, or the estate.

*In re D.W.G.K. Restaurants, Inc.,* 84 B.R. 684, 690 (Bankr.S.D.Cal.1988) (emphasis added).

Fortunately, this Circuit has recently provided further guidance. The applicable test to determine whether there has been a "substantial contribution" is "whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lister, supra* at 57 (citing *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557, 569 (Bankr.D.Utah 1985) and *Consolidated Bancshares, supra* at 1253.[11]

**10.** This balance is recognized in *In re Buttes Gas & Oil Co.,* 112 B.R. 191, 196 (Bankr.S.D.Tex. 1989); *In re U.S. Lines, Inc.,* 103 B.R. 427, 429 (Bankr.S.D.N.Y.1989); *Matter of Baldwin–United Corp.,* 79 B.R. 321, 338 (Bankr.S.D.Ohio 1987); *In re American 3001 Telecommunications, Inc.,* 79 B.R. 271, 273 (Bankr.N.D.Tex. 1987); *In re Ace Finance Co.,* 69 B.R. 827, 829 (Bankr.N.D.Ohio 1987); *Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1253 (5th Cir. 1986); *In re Rockwood Computer Corp.,* 61 B.R. 961, 964–965 (Bankr.S.D.Ohio 1986); *In re Russell Transfer, Inc.,* 59 B.R. 871, 873 (Bankr.W.D. Va.1986); *Matter of Patch Graphics,* 58 B.R. 743, 745 (Bankr.W.D.Wis.1986); *In re General Oil Distributors, Inc.,* 51 B.R. 794, 805 (Bankr.E.D.

N.Y.1985); *In re Baldwin–United Corp.,* 43 B.R. 443, 451–452 (S.D.Ohio 1984); *In re Calumet Realty Co.,* 34 B.R. 922, 926 (Bankr.E.D.Pa. 1983); *In re Richton Int'l Corp.,* 15 B.R. 854, 856 (Bankr.S.D.N.Y.1981).

**11.** Elsewhere, similar standards are applied. Efforts are found to substantially contribute to a case when they foster and enhance, rather than retard or interrupt the progress of reorganization. *See, e.g. Calumet Realty, supra* at 926; *Richton Int'l, supra* at 856. Many courts have found that the principal test of "substantial contribution" is simply whether a benefit enures to the debtor's estate, the creditors, and, to the extent relevant, the stockholders. *See, e.g.*

In *Lister*, the Tenth Circuit addressed three categories of efforts, each one illustrating a requirement of "substantial contribution" that the Court found to be absent. The first category of efforts for which the creditor in *Lister* sought compensation were "pre-petition efforts which only incidentally benefitted the estate." *Lister, supra* at 57. The applicant had obtained a judgment against the debtor and had begun collection efforts which included gathering information about the debtor's assets, enjoining the transfer of those assets, and commencing garnishment and attachment proceedings against the assets. The debtor's subsequent bankruptcy petition stayed the collection efforts. Although the applicant never collected any money from its pre-petition efforts, the garnishment and attachment proceedings succeeded in freezing some of the assets. The bankruptcy trustee was able to collect "several hundred thousand dollars for the bankruptcy estate from the frozen assets." *Id.*

█ The Tenth Circuit found, however, that the applicant had undertaken the pre-petition efforts *solely* for the purpose of collecting his judgment and *not* for the benefit of the estate as a whole.[12] The court concluded:

> His actions could not have been undertaken in anticipation of the reorganization of the debtors, as he was unaware of the pendency of bankruptcy proceedings until after the petition had been filed. Any benefit accruing to the bankruptcy

estate as a result of these [pre-petition] efforts was only *incidental.*
*Id.* (emphasis added).

The term "incidental," in light of the facts in *Lister*, appears to refer to any such accidental, inadvertent, or unintentional result. *See*, Webster's Third New Int'l Dictionary (1966) (defining incidental as "occurring merely by chance or without intention or calculation" and listing as its synonym "accidental"). Missing from this category of efforts, the Tenth Circuit found, was any *intent* by the applicant to benefit the bankruptcy estate primarily because of lack of knowledge of its existence.

Unlike the applicant in *Lister*, Travelers does not request compensation from the estate for any of its pre-petition efforts to collect on the promissory note, even though the Court Order which appointed a receiver could have conferred some such incidental or accidental benefit to the estate by working to preserve its primary asset. Clearly, under *Lister* these efforts would not have been compensable pursuant to 11 U.S.C. § 503(b)(3)(D). Instead, Travelers requests compensation only for post-petition work performed when it was intimately aware of the pendency of the bankruptcy proceedings. The Court in *Lister* was faced with a situation in which the applicant acted *solely* in its own interest and *could not possibly* have had an intent to benefit an estate of which he was unaware and, indeed, that was not yet in existence. Although the largest single creditor of the estate[13] was clearly working in furtherance of its own best interests,[14] this Court cannot find that

*Buttes Gas & Oil, supra* at 194; *Rockwood Computer, supra* at 965; *Jensen–Farley Pictures, supra* at 569.

**12.** Services provided *solely* for the benefit of a creditor/client are not compensable. *Buttes Gas & Oil, supra* at 194 and 195; *In re Standard Metals Corp.*, 105 B.R. 625, 630 (Bankr.D.Colo. 1989); *U.S. Lines, supra* at 430; *Baldwin–United*, 79 B.R. at 338; *Consolidated Bancshares, supra* at 1253 (efforts not merely on behalf of his client's interest); *General Oil Distributors, supra* at 805; *In re United Puerto Rican Food Corp.*, 41 B.R. 565, 574 (Bankr.E.D.N.Y.1984) (efforts benefitted the creditor alone); *Calumet Realty, supra* at 926; *Richton Int'l, supra* at 856. *But see, In re 1 Potato 2, Inc.*, 71 B.R. 615, 618 n. 3 (Bankr.D.Minn.1987).

**13.** Just as extensive participation alone is insufficient grounds to justify compensation (*U.S. Lines, supra* at 430; *In re McLean Industries, Inc.*, 88 B.R. 36, 38 (Bankr.S.D.N.Y.1988); *In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 690 (Bankr.S.D.Cal.1988); *Ace Finance, supra* at 830), so the size of the creditor's claim alone is insufficient grounds to deny compensation (*In re White Motor Credit Corp.*, 50 B.R. 885, 902–904 (Bankr.N.D.Ohio 1985)).

**14.** A correspondence of an applicant's self-interest in serving its clients and the interests of debtors in a successful reorganization does not bar compensation to an applicant out of the estate. Work performed over and above what was necessary to represent applicant's own client's interest which resulted in a "substantial

Travelers' efforts were in no way intended to confer a benefit upon the estate as a whole.

Admittedly, Travelers' primary and driving purpose was to protect its own rights and interests. However, it appears to this Court that a secondary or tertiary purpose of Travelers was to serve the best interests of the estate and creditors generally. *See, In re Russell Transfer, Inc.*, 59 B.R. 871, 873 (Bankr.W.D.Va.1986) (because of timing, the court could not find that the advice sought and given was not a "substantial contribution" to what ultimately appeared as a successful reorganization plan). Travelers' efforts were designed to increase the payout to the unsecured creditors. While Travelers was a significant member of the class of unsecured creditors, it was not the whole class.

The second type of efforts addressed by the *Lister* court were "post-petition efforts which failed to contribute to the estate." *Id.* The applicant in *Lister* performed several post-petition acts which were either not useful or not successful. *Standard Metals, supra* at 629 ("The Court [in *Lister*] found that most of the creditor's efforts did not come to fruition...."). He turned over the asset information that he had gathered to the trustee—but the information was duplicative and was, therefore, not useful or beneficial. He negotiated with potential purchasers—but none of the

negotiated sales were ever executed. He even "developed the only proposed plan for reorganization ... [and] ... negotiated with various creditors on behalf of his plan"—but it was never approved.[15] *Id.*

Drawing from the above facts, the Tenth Circuit concluded, "[t]o be compensable under section 503(b)(3)(D), post-petition efforts must result in an *actual* and demonstrable benefit to the bankruptcy estate." *Id.* After further stating that "only reorganization efforts directly benefiting the estate will be compensated," the court opined that the applicant's "post-petition efforts failed to contribute any *direct* and demonstrable benefit to the estate and consequently were not compensable." *Id.* at 58. In this portion of the opinion, the Court focused its attention upon the *results* of the efforts under consideration.[16]

It is beyond cavil that Travelers' efforts conferred actual, direct and demonstrable benefit upon the estate and particularly upon the unsecured creditor class. Successful confirmation of a plan which provided for full payment to all creditors over the Debtor's proposed plan which provided for picayune or token payments is, in and of itself, sufficient benefit to pass this second hurdle.

The third category[17] of efforts faced by the Tenth Circuit in *Lister* were "post-peti-

---

benefit" to the reorganization is compensable. *Ex parte Roberts*, 93 B.R. 442, 445 (D.S.C.1988); *Richton Int'l, supra* at 856. *See generally, In re W.G.S.C. Enterprises*, 47 B.R. 53, 58 (Bankr.N.D. Ga.1985) (the efforts of two of the largest unsecured trade creditors, whose objections to plan confirmation resulted in a modification of the plan from a 50% to a 100% payout for all unsecured creditors, substantial modification of settlement agreements and other benefits, were "obviously substantial and beneficial" to unsecured creditors *even though* they benefitted themselves greatly).

15. An award of compensation "does not necessarily depend on the confirmation of a proposed plan of reorganization." *In re Lister*, 846 F.2d 55, 58 (10th Cir.1988).

16. "Benefit to the estate or 'results obtained' has been de-emphasized for allowances under Section 330, but it lies at the heart of awards under Section 503(b)(3)(D) and (4) for making a 'substantial contribution' to the case." *Jensen–Far-*

ley Pictures, supra at 566 n. 7. See also, In re Texaco, Inc., 90 B.R. 622, 630 (Bankr.S.D.N.Y. 1988); White Motor Credit, supra at 893; Calumet Realty, supra at 926.

17. Most cases combine the second and third elements of *Lister* and include, as their third element, a consideration of whether the efforts were duplicative of those rendered by others such as the attorneys for a creditors' committee, the creditors' committee itself, or the debtor and its attorneys. *See e.g., Buttes Gas & Oil, supra* at 194; *U.S. Lines, supra* at 429; *D.W.G.K. Restaurants, supra* at 690; *Baldwin–United*, 79 B.R. at 338; *Ace Finance, supra* at 830–831 (creditor performed the duties of both the debtor and others without first demonstrating their lack of either ability or willingness to perform the duties themselves, thus rendering the creditor's services noncompensable as voluntary and potentially duplicative); *Consolidated Bancshares, supra* at 1252; *Rockwood Computer, supra* at 966. *See also,* Norton Bankr.L. & Prac. § 12.32 (1981).

tion efforts which may have minimally contributed to the estate." *Id.* at 57. Apparently some of the applicant's services did benefit the estate, particularly the "recovery of between $35,000 and $40,000 in hidden assets" and his alleged representation of the unsecured creditors "despite his own status as a secured creditor." *Id.* at 58. While acknowledging that this category of efforts "may have minimally benefited the estate, they clearly do not amount to a 'substantial contribution' justifying compensation." *Id.* The Court here focuses upon the *degree* or *significance* of the contribution being considered. Something more than minimal assistance to the estate must have been provided. *Accord, Matter of D'Lites of America, Inc.,* 108 B.R. 352, 356 (Bankr.N.D.Ga.1989) (an applicant must prove significant and tangible benefit). Again, this Court must not hesitate to acknowledge the invaluable and substantial assistance provided to the instant estate by Travelers. Only because of its pertinacity and willingness to compromise its own claim were the other unsecured creditors able to receive payment one-hundredfold.

▆ It is clear to this Court that, *"viewed as a whole,"* Travelers' efforts made a "substantial contribution" to the bankruptcy estate and meet all three of the elements set forth by the Tenth Circuit in *Lister* to entitle it to compensation pursuant to 11 U.S.C. § 503(b)(3)(D). *Lister, supra* at 58.

Travelers has met its burden of proof. It has been sufficiently demonstrated that the services in question were actual and necessary for the successful confirmation of a Plan enabling a reorganization of the Debtor. It is equally evident that both the estate and the creditors actually received a substantial net benefit therefrom. Travel-

ers has shown by a preponderance of the evidence that the impaired creditors either have or will soon receive a much larger net dividend because of its efforts. This Court speculates that if creditors such as Travelers are subject to too strict of a standard the result would be an unfortunate chilling effect upon the goal of 11 U.S.C. § 503(b)(3)(D) of encouraging the kind of meaningful creditor participation in reorganization proceedings and beneficial service to the interests of all unsecured creditors as is presently before this Court.

Once we pass the threshold test and determine that Travelers conferred a "substantial benefit" upon the estate entitling it to compensation, this Court must decide the value to be placed upon the administrative claim.[18]

In paragraph (4), 11 U.S.C. § 503(b) further provides that, after notice and a hearing, an administrative expense shall be allowed for the following:

*[R]easonable* compensation for professional services rendered by an attorney or an accountant of an entity whose *expense is allowable under paragraph (3)* of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant; ... (emphasis added).

The Objections to the Application raised concerns regarding the reasonableness of the total compensation requested. Faced with these concerns, at the hearing on this matter Travelers' counsel, Haligman & Lottner ("Applicant") voluntarily agreed to substantially reduce its compensation request.[19] Although the Application and sup-

---

18. *See* n. 9, *supra.*

19. Applicant originally sought a total of $73,-673.84 (fees of $66,313.16 and costs of $7,360.68) for services rendered and costs incurred for the period February 2, 1988 through November 21, 1989. At the hearing, the amount sought was reduced to a total of $32,193.00 (fees of $28,955.00* and costs of $3,238.00) for the same period. The amended fee request was broken down as follows:

| Category | Amended Fee Request |
|---|---|
| Case Administration | $ 5,620.00 |
| Cash Collateral | $ 0.00 |
| Relief from Stay | $ 0.00 |
| Post–Confirmation Matters | $ 2,175.00 |
| Creditors' Fee Application | $ 490.00 |
| Plan and Disclosure Statement | $19,500.00 |
| Debtor's Fee Application | $ 1,160.00 |
| TOTAL | $28,945.00* |

porting documents are less than a model of clarity, this Court is satisfied that the amount as amended represents a reasonable request.[20]

The question remains, however, is the total request, although reasonable, compensable? This Court cannot allow as administrative expenses fees and costs which contributed to efforts by Travelers which, *when viewed individually,* were of little or no benefit to the estate.

Applicant seeks compensation in five areas: case administration, post-confirmation matters, its own fee application, the Plan and Disclosure Statement, and Debtor's fee application.

■ In support of its request for compensation for "case administration," Applicant points to its efforts to "keep the Debtor honest" and otherwise make information available to the other creditors. While work which results in adequate disclosure and elucidation of facts may amount to a "substantial contribution" and therefore be compensable (*see, In re Texaco, Inc.,* 90 B.R. 622, 629 (Bankr.S.D.N.Y.1988)), attention devoted to matters of general case administration are usually performed exclusively for the benefit of a client and

likely are duplicative, thus rendering them non-compensable (*D.W.G.K. Restaurants, supra* at 689–690). The narrative in the instant Application [21] reveals only such activities as would be expected of any creditor, particularly one with such a large stake in the Debtor's case. As no actions appear to be beyond those reasonably necessary to protect its client's own rights and interests, Applicant's request for $5,620.00 to be allowed as an expense of administration must be denied.

■ The category "post-confirmation matters" apparently deals with matters of securing and managing the Building once it became the property of Travelers according to the terms of the confirmed Plan. Although Applicant alleges that, during that period, it was fulfilling the role traditionally undertaken by counsel for a debtor, there can be no doubt that these efforts enured to the benefit of *no one* but Travelers, Applicant's client. The property was no longer property of the estate. Its future, prosperity or failure, no longer has an impact upon the estate and is of no real concern to this Court. The $2,175.00 requested for these services cannot be charged against the estate.

*The difference between the lump sum request for fees and the breakdown recited by Applicant must be resolved in favor of the more specific breakdown. The amended fee request will be deemed to be $28,945.00 for a total amended request of $32,183.00.

**20.** Counsel must make a reasonable effort to submit meaningful billing records from which the Court, as well as other interested parties, can "make an informed evaluation of the nature, reasonableness and value of the services which have been provided." *In re Frontier Airlines, Inc.,* 74 B.R. 973, 976 (Bankr.D.Colo.1987). The application should be specific enough to enable the Court to "identify the legal problems involved, the difficulty of the problems, how the problem was resolved, and what results were achieved for the estate." *In re Lafayette Radio Electronics Corp.,* 16 B.R. 360, 361 (Bankr.E.D. N.Y.1982) cited with approval by *In re Werth,* 32 B.R. 442, 445 (Bankr.D.Colo.1983). The determination of the adequacy of the application and supporting records is left to the Court whose duty it is to make an independent determination as to the reasonableness of the fees "keeping in mind that the Code permits compensation commensurate with specialists in other fields, in order to attract lawyers of high quality and

integrity to the practice of bankruptcy law." *Id.* at 444–445. *See also, In re Lederman Enterprises, Inc.,* 106 B.R. 674, 679 (Bankr.D.Colo.1989); *In re Kreidle,* 85 B.R. 573, 574 (Bankr.D.Colo. 1988). The Court in awarding fees should be concerned with multiplying a reasonable billing rate by a reasonable estimation of the number of hours expended. *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 946, 103 L.Ed.2d 67 (1989). *See generally, Matter of Permian Anchor Services, Inc.,* 649 F.2d 763, 768 (10th Cir.1981) (relying on *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) as setting forth factors which the Court should consider in awarding fees).

**21.** The narrative relating to case administration reads as follows:

Reviewed plethora of pleadings from February, 1988 to the present; review statements and schedules, leases, monthly financial reports and other documents; preparation for an attendance at 341 Meeting and Rule 2004 Examination of the Debtor; monitoring the case in general; coordination with Debtor's counsel, other attorneys and client. Application, p. 4.

The time necessary to prepare the instant Application is compensable. As an attorney seeking fees under 11 U.S.C. § 503(b)(3)(D) must apply to the Court in the same manner as an attorney under 11 U.S.C. § 330, this Court cannot reasonably justify a different treatment for purposes of compensation for fee applications. Upon a finding of "substantial contribution" for the underlying services, the Applicant is entitled to allowance of an administrative claim of $490.00. *Accord, In re Hers Cosmetics Corp.*, 114 B.R. 240, 244 (Bankr.C.D.Cal.1990) ("The argument that a fee award is inappropriate ... because the estate does not benefit ... may have surface appeal, but it lacks substance after analysis."); *In re Catalina Spa & RV Resort, Ltd.*, 97 B.R. 13, 21 (Bankr.S.D.Cal. 1989); *In re W.G.S.C. Enterprises, Inc.*, 47 B.R. 53, 58 (Bankr. N.D.Ga.1985). *Contra, U.S. Lines, supra* at 432 (unless it can be shown how the work substantially contributed to the benefit of the estate or the creditors in general); *Matter of Seatrain Lines, Inc.*, 21 B.R. 194, 195 (Bankr.S.D.N.Y.1982).

The benefit to the estate from formulating a Plan and developing a Disclosure Statement to compete with the one proffered by the debtor has already been evaluated. This Court agrees that the $19,-500.00 requested conferred a substantial benefit and is compensable from the estate.

Applicant also requests compensation for its efforts in objecting to the fee application of the Debtor's counsel. Applicant contends that, because of its objection, the award was reduced by over $11,000.00 which resulted in a savings to the estate. Such a savings was a benefit conferred upon the entire estate, therefore, the $1,160.00 request will be allowed as an administrative claim.

Due to a combination of the inadequate detail in the application and the voluntary and apparently arbitrary reductions made by Applicant at the hearing on this matter, this Court is unable to specifically allocate the expense reimbursement request to each of the general categories of services as set forth above. For lack of a more precise method, this Court will apportion the expenses as follows:

| Category | Amended Fee Request | % of Total | Allocated Expenses |
|---|---|---|---|
| Case Administration | $ 5,620.00 | 19 | $ 615.22 |
| Post–Confirmation Matters | $ 2,175.00 | 8 | $ 259.04 |
| Creditors' Fee Application | $ 490.00 | 2 | $ 64.76 |
| Plan and Disclosure Statement | $ 19,500.00 | 67 | $2,169.46 |
| Debtor's Fee Application | $ 1,160.00 | 4 | $ 129.52 |
| | $ 28,945.00 | | $3,238.00 |

Only those expenses which relate to a category of services which have been found to have substantially contributed to the estate or the creditors in general may be allowed. Accordingly, a total of $2,363.74 will be allowed as reimbursement of expenses.

For the reasons set forth above, it is

ORDERED that the Application by Haligman & Lottner, P.C. for Interim Allowance of Compensation and Reimbursement of Expenses is hereby allowed the amount of $21,150.00 as compensation for attorney's fees and the amount of $2,363.74 as reimbursement of expenses, for a total amount of $23,513.74, and denied as to the remainder of the amounts requested.

IT IS FURTHER ORDERED that the applicant be paid by Travelers which, pursuant to the confirmed Plan of Reorganization, is in possession of the remaining funds of the estate.