**In re STANDARD METALS CORPORATION, Debtor.**

**Bankruptcy No. 84 B 00945 C.**

United States Bankruptcy Court, D. Colorado.

Sept. 5, 1989.

Christopher L. Richardson, Davis Graham & Stubbs, Denver, Colo., for debtor.

Juli E. Lapin, Isaacson, Rosenbaum, Woods, Levy & Snow, P.C., Denver, Colo., for NSNJ Bondholders.

Caroline C. Fuller, Fairfield & Woods, P.C., Denver, Colo., for Unsecured Creditors' Committee.

Leo M. Weiss, Office of the U.S. Trustee, Denver, Colo., for Acting U.S. Trustee.

## OPINION AND ORDER

PATRICIA A. CLARK, Bankruptcy Judge.

This matter is before the Court upon the application of Isaacson, Rosenbaum, Woods & Levy, P.C., (Isaacson) for itself and on behalf of Adelman, Levine, Krasny, Gold & Levin (Adelman) (together the Applicants) for allowance of compensation and reimbursement of expenses under 11 U.S.C. § 503(b)(3) and (4) as attorneys for creditors. The Acting United States Trustee and the Unsecured Creditors' Committee (Committee) each filed objections to the application. A hearing was held on July 24, 1989 and the matter was taken under advisement.

Applicants assert that they are entitled to compensation pursuant to Section 503(b)(3) and (4) due to their substantial contribution to this case. They contend that their efforts to cure the due process problems of their clients, Mr. Daniel Sheftelman and National Smelting of New Jersey, Inc. (NSNJ) Bondholders, resulted in the settlement of the Bondholders' claims. Their position is that resolution of such issue protects the debtor from postconfirmation litigation and potential damage awards on the NSNJ Bondholders' claims. The Applicants further contend that their efforts to obtain the stay of distribution under the Sixth Amended Plan of Reorganization benefitted the debtor because the stay prevented the debtor from either making multiple distributions or recalling distributions. The Applicants maintain that they benefitted the debtor's reorganization. They assert that their activities resulted in the modification of the reorganization plan by providing for the addition of a class of creditors, adequate disclosure of the plan to that class, and a settlement of all claims of that class. The Applicants primarily rely upon *In re Texaco, Inc.*, 90 B.R. 622 (Bankr.S.D.N.Y.1988), as a factually similar case to support their assertion of entitlement to Section 503(b) compensation.

The Acting United States Trustee contends that the Applicants are not entitled to administrative expenses because their efforts did not provide an actual and demonstrable benefit to the debtor's reorganization. The trustee further contends that the Applicant's efforts did not materially assist in the debtor's confirmation efforts. Moreover, the trustee argues that the Applicant's reliance upon the *Texaco* case is not well founded. The trustee maintains that the Applicant's efforts resulted in a significant diminution of the unsecured creditors' dividends, and in substantial delay and unnecessary complication of the case. The trustee primarily relies upon *In re Lister*, 846 F.2d 55 (10th Cir.1988); *In re Texaco, Inc., supra;* and *Matter of Consolidated Bancshares*, 785 F.2d 1249 (5th Cir.1986) in support of his contentions.

The Committee asserts that the Applicants' activities did not contribute substantially to this case. The Committee argues that the Applicants' activities were adverse to the general reorganization process. It maintains that the litigation over the allowance of the Bondholders' claims and the Bondholders' numerous objections to other proceedings in this case caused the estate to incur significant administrative costs. Further, the Committee contends that the Bondholders represented only their own interests and not those of the entire estate. In addition, the Committee maintains that the Applicants are not entitled to compensation for any fees incurred prior to confirmation of the Sixth Amended Plan in June of 1986, which are barred by the confirma-

tion order. Moreover, it alleges that fees incurred since that time are not contemplated by the confirmation order and are barred under the doctrine of law of the case pursuant to Judge Stewart Rose's Order entered on the docket on November 23, 1987.

The facts of this case have been stipulated to by the parties. The essential facts, taken in part from that stipulation, are as follows. The debtor filed a voluntary Chapter 11 petition on March 5, 1984. Upon motion and notice by the debtor, June 10, 1984 was set as a bar date for claims.

On August 30, 1984, Dann S. Sheftelman attempted to file an individual proof of claim and a claim on behalf of a purported class of NSNJ Bondholders. At that time, he did not file a motion to file a late claim, nor did he file a verified statement pursuant to Bankruptcy Rule 2019. The debtor objected to the attempted filing and, on March 21, 1985, Judge Gueck entered an Order disallowing the NSNJ Bondholders' claims [1] on the grounds that (a) they were filed late, (b) Sheftelman failed to comply with discovery orders, and (c) a class proof of claim cannot be filed in a bankruptcy proceeding.

The Order disallowing the Sheftelman and NSNJ Bondholders' claims was appealed. During the course of the appeal to the District Court and the Tenth Circuit, the debtor and the Creditors' Committee submitted several plans of reorganization and disclosure statements. Mr. Sheftelman, on his own behalf and on behalf of the NSNJ Bondholders, objected to the plans and statements primarily on the grounds of the pendency of the appeal with respect to the late-filed proofs of claim and the failure of the plan and statements to address his claims or those of the NSNJ Bondholders. Additional grounds for objection were that the plans sought to discharge any and all debts of the debtor arising at any time before the entry of the confirmation order,

including Mr. Sheftelman and the NSNJ Bondholders' claims.

In October of 1985, the debtor and the Committee jointly submitted a plan of reorganization. Mr. Sheftelman and the NSNJ Bondholders objected to that plan. The objections were that the plan was not capable of confirmation because of preferential treatment of the then existing Class 9 creditors, the failure to propose means to satisfy the claims of the new class (which encompassed Mr. Sheftelman and the NSNJ Bondholders) which had not been liquidated or estimated and that the debtor would be exposed to significant legal expenses in defending itself from the new classes' claims. Confirmation of that plan was denied.

On May 8, 1986, the debtor's sixth amended disclosure statement was approved. Mr. Sheftelman and the NSNJ Bondholders objected to confirmation. Judge McGrath confirmed the plan on June 23, 1987, ruling that Sheftelman had no standing to object to confirmation, but stayed distributions to be made under the plan to the unsecured Class 7 creditors, pending resolution of the Sheftelman appeal. The Orders of confirmation and the stay of distribution were appealed. The final resolution was that the Court allowed partial distribution to the unsecured creditors, but stayed the remainder of the distribution to Class 7 creditors pending determination of the rehearing by the Court of Appeals of the Sheftelman and the NSNJ Bondholders' claims.

In 1987, the Committee attempted to seek compensation from the debtor for work done postconfirmation. That request was denied by Judge Stewart Rose in an Order entered on the docket on November 23, 1987. The Court found that the Committee was not entitled to supplemental compensation for postconfirmation work because the Order of confirmation did not contain any express provision for the continued existence and payment of counsel

---

**1.** The claim arises out of a class action suit brought in the United States District Court for the District of New Jersey against various parties involved in the sale and financing of a lead smelter facility owned by National Smelting of

New Jersey, Inc. The debtor was named as a defendant in that action, but was not served because of its pending bankruptcy. The NSNJ Bondholders alleged damages in excess of $6.6 million.

for the Committee during the period after the confirmation of the plan. The Court did allow the committee to be paid out of the interest which accumulated during the pendency of the stay of distribution to the Class 7 General Unsecured Creditors.

The Court's Order on Mr. Sheftelman's claim and the claim filed on behalf of the NSNJ Bondholders was affirmed by the United States District Court on October 25, 1985 and, subsequently, by the Tenth Circuit Court of Appeals on April 20, 1987. *See In re Standard Metals Corp.*, 817 F.2d 625 (10th Cir.1987). Both Sheftelman and the Securities and Exchange Commission (the SEC) filed petitions for rehearing of the decision of the Tenth Circuit. Sheftelman argued, among other things, that the Sheftelman claims should be allowed as late-filed because the NSNJ Bondholders received insufficient notice of the bar date for filing claims. The petitions for rehearing filed by Sheftelman and the SEC were granted, and on December 29, 1987, the Tenth Circuit held that the notice given to the NSNJ Bondholders by the debtor was insufficient and that the Bankruptcy Court should establish a bar date for the NSNJ Bondholders and provide notice for the filing of the claims. *Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383 (10th Cir.1987). In response to a request for clarification by the SEC, in early March, 1988, the Tenth Circuit stated that, except for the issue of notice to the NSNJ Bondholders, its April 20, 1987 decision was not vacated by its December 29, 1987 decision. The Committee and the debtor's petitions for rehearing of the December 29, 1987 decision were denied.

During the summer of 1988, the debtor, the Committee and counsel for the NSNJ Bondholders reached agreement regarding a proposed settlement of their claims, which required the confirmation of the Bankruptcy Court and approval within the context of the New Jersey litigation. The settlement calls for modification of the treatment of the unsecured creditors under Class 7 of the originally confirmed plan so that $240,000 of the accrued interest on the Class 7 funds and one-half of the serial notes payable to the unsecured creditors will be paid over to the NSNJ Bondholders, whose claims will constitute Class 10 under the modified plan. For its part, the debtor will contribute $50,000 in cash and two secured promissory notes in the combined face amount of $325,000 to be delivered to the NSNJ Bondholders. To fully consummate the settlement, counsel for the NSNJ Bondholders were to obtain an order in the New Jersey litigation approving the settlement.[2]

■ As a threshold matter, the Court will examine whether the Applicants' request for compensation is barred by the law of the case. The law of the case doctrine is "an amorphous concept," *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). The law of the case doctrine provides that parties should not be allowed to relitigate issues previously determined in a proper forum absent exceptional circumstances. *Insurance Group Committee v. Denver & Rio Grande Western Railroad Co.*, 329 U.S. 607, 612, 67 S.Ct. 583, 585, 91 L.Ed. 547 (1947). An explicit determination of the issues is not necessary because the law of the case "applies to issues decided by necessary implication." *E.g., Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1568 (11th Cir.1985). However, the Court retains the power to reconsider any of its own orders. *In re Pottasch Bros. Co. Inc.*, 79 F.2d 613 (2d Cir. 1935); *Castaner v. Mora*, 234 F.2d 710 (1st Cir.1956); *In re Murphy*, 5 B.R. 596 (Bankr.N.D.Ga.1980).

The Court is not persuaded by the Committee's assertion that the Applicants are barred from obtaining compensation based upon the law of the case. In November of 1987, Judge Rose denied supplemental compensation to the Committee because there were no provisions for such payment in the confirmed plan. That Order was not appealed, nor was a motion to reconsider filed. By implication under the law of the

---

**2.** The debtor obtained a modification of the permanent injunction entered as part of the original confirmation Order to permit it to effectuate the settlement.

case, that Order bars any application for postconfirmation compensation which was not contemplated in the original Order of confirmation. Nevertheless, this situation involves exceptional circumstances which makes the law of the case inapplicable. The Order was entered at a time when this Court did not recognize the standing of the Applicants' clients. Therefore, those participants whose standing was acknowledged at the time Judge Rose's Order entered are bound by the law of the case; however, it is inequitable to bind the Applicants by that Order.

■ The next issue which must be resolved is whether the Applicants are entitled to compensation pursuant to 11 U.S.C. § 503(b)(3). The relevant portion of Section 503 states:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> .    .    .    .    .
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>
> .    .    .    .    .
>
> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 .... [3]

In reviewing Section 503(b)(3) applications for compensation this Court must apply the standard set forth in *In re Lister,* 846 F.2d 55 (10th Cir.1988). *Lister* re-

quires the Court to determine whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors. *Id.* at 57; *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557, 569 (Bankr.D.Utah 1985). The Circuit Court stated that "[o]nly reorganization efforts directly benefiting the estate will be compensated." *Lister, supra* at 58. In dicta the Circuit Court stated that "[e]fforts undertaken by a creditor solely to further his own self-interest, however, will not be compensable, notwithstanding any incidental benefit accruing to the bankruptcy estate." *Id.* at 57. Moreover, the Court noted that there is a presumption that creditors act primarily in their own interest and not for the benefit of the estate as a whole. *Id.* (citations omitted). The applicant has the burden of providing a substantial contribution. *Id.* citing *In re Werth,* 32 B.R. 442, 444 (Bankr.D.Colo. 1983).

In *Lister* a creditor was denied compensation as an administrative expense because his efforts were not found to have substantially benefitted the estate. This ruling was made despite the creditor's active involvement in proposing a reorganization plan and assisting in the recovery of between $35,000 and $40,000 in assets. The Court found that most of the creditor's efforts did not come to fruition and the recovery was seen as a minimal benefit, hence there was no substantial contribution and he was denied compensation.

The holding in *Lister* is consistent with other Section 503(b) case authority. In the cases cited in the Applicants' brief, awards were made to those attorneys whose efforts preserved, enhanced or disclosed information about estate assets.[4] Hence the

---

**3.** Section 503(b) is derived from Bankruptcy Act Sections 242 and 243. The phrase 'substantial contribution' does not require a contribution that leads to confirmation of a plan. It may be substantial contribution if the person involved uncovers facts that would lead to a denial of confirmation, for instance, fraud in connection with the case. H.R.Rep. No. 595, 95th Cong. 1st Sess. 355, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6311.

**4.** Applicants cite *In re McClean Industries, Inc.,* 88 B.R. 36 (Bankr.S.D.N.Y.1988) (counsel to

merchant seamen made substantial contribution when he raised initial objection to sale of stock which ultimately resulted in a higher sale price); *In re Washington Lane Associates,* 79 B.R. 241 (Bankr.E.D.Pa.1987) (fees and costs expended in obtaining court permission to install individual gas utility meters in each apartment of debtor's apartment building were substantial contribution to estate, to allow debtor to reorganize through sale of individual apartments); *Ex parte Roberts,* 93 B.R. 442 (D.S.C.1988) (unsecured creditors substantially contributed to debtor's reorganization where creditor persist-

established case authority has construed Section 503(b) to only allow compensation for efforts directly benefiting the estate and the creditors.

The Court is concerned about the potential ramifications of opening the door to Section 503(b)(3) claims too far. That concern is consistent with the basic tenant that "a creditor's attorney must ordinarily look to its own client for payment, unless the creditor's attorney rendered services on behalf of the reorganization, not merely on behalf of his client's interest, and conferred a significant and demonstrable benefit to the debtor's estate and the creditors." *In re General Oil Distributors*, 51 B.R. 794, 806 (Bankr.E.D.N.Y.1985).

In the matter before the Court the Applicants' clients were erroneously denied standing as they had not timely filed proofs of claim in 1984.[5] Applicants continued to make numerous appearances in this case in an effort to protect their interests. Finally, after three years of appeals, the Tenth Circuit determined that the NSNJ Bondholders were denied due process notice of the time to file a proof of claim, and that the bar date should be extended to allow them to file their claims.[6] Subsequently, a settlement was reached and the plan was modified postconfirmation to include the Bondholders' claims.

Based upon the considerations in *Lister*, the Court must determine whether the Ap-

plicants have overcome the presumption that they were acting primarily in their own interest and not for the benefit of the estate as a whole. The Applicants' work resulted in the addition of their clients as a class of creditors to the plan, adequate disclosure of the plan to that class, and a settlement of all claims of that class. It resolved the problem in the originally confirmed plan by providing for the discharge of that class. The Court finds that those actions and the results achieved are commendable. Nevertheless, the Court concludes that the Applicants' actions were taken primarily for the benefit of their clients and not for the estate as a whole.

The Applicants argue that their Section 503(b) application is analogous to the applications of the derivative shareholders' attorneys which were approved in *In re Texaco*, 90 B.R. 622. In *In re Texaco*, some of the derivative shareholders' attorneys were awarded attorney's fees pursuant to Section 503(b) for their substantial contribution. The attorneys' contribution resulted in adequate disclosure to the shareholders and elucidation of the facts surrounding the director and officer indemnification and release provisions in a proposed joint plan. The Court noted that it did not have the factual basis to find that all the efforts made by those attorneys in pursuit of their clients' derivative claims were obstructive. The Court stated that "[a]lthough the De-

---

ently insisted debtor's plan provide for interest to *all* unsecured creditors pursuant to Section 726(a)(5), even though their objections caused the debtor difficulty in obtaining confirmation of prior plans); and *In re Texaco*, 90 B.R. 622 (work performed by certain attorneys bringing shareholder derivative actions on behalf of the Chapter 11 debtors were entitled to fees for their efforts in disclosing to the equity security holders information and elucidating facts about the origin of certain provisions contained in a joint plan of reorganization; those provisions provided for the release and indemnification provisions of Texaco officers and directors).

5. The Court notes that the problem was exacerbated in part by Mr. Sheftelman's failure to file a motion to extend the bar date until some five months after filing his claim and his failure to file a verified statement pursuant to Bankruptcy Rule 2019. If the due process issue had been raised at the time the proofs of claim were filed, the entire matter might have been resolved

without the substantial amount of litigation which was ultimately involved.

6. Notably, the legislative history of Section 503(b), *supra* note 3, states that it is a substantial contribution when someone uncovers facts that would lead to a denial of confirmation, such as fraud in connection with the case. Here, the Tenth Circuit did not find that the debtor's failure to properly notice the NSNJ Bondholders was done in an attempt to preclude their participation or fraudulently conceal the existence of those creditors. *See Standard Metals*, 839 F.2d at 1385. Moreover, Judge McGrath was aware of the notice issue prior to the original confirmation of the plan of reorganization and failed to make a proper determination of the issue. Thus, the Applicants' efforts to obtain a determination that the notice was in fact insufficient is not the type of fact which when uncovered amounts to a substantial contribution to the estate or the creditors other than the bondholders.

rivative Attorneys acted on behalf of their clients, the derivative actions, if successful, represented potential value to the estate and would have benefitted all shareholders." *Id.* at 629. The Court continued stating, "[t]he pursuit of information by some of Derivative Attorneys which served to protect the rights of *all* the shareholders was a substantial contribution and benefit to the debtors' estate." *Id.* (emphasis added).

The case at hand is factually distinct from *Texaco.* The claims of the Applicants' clients were related to a lawsuit which, if the clients were successful would not have enhanced the value of the estate, but rather would have decreased the value of the estate. The inclusion of their clients in the modified plan and the settlement of their claims resulted in making those claims noncontingent and liquidated. Further, the efforts of the Applicants resulted in the withholding of funds from the Class 7 general unsecured creditors for almost three years (the interest remaining accrued on those funds after payment to the bondholders does not serve to adequately compensate the general unsecured creditors for the loss of the use of those funds for that period). Moreover, the inclusion of the NSNJ Bondholders in the modified plan resulted in a reduction by half of the amount of serial notes that the Class 7 creditors were to receive, the other half will be paid to the NSNJ Bondholders. Hence, the Court finds that the outcome and the efforts to achieve it do not constitute the type of activity which substantially contributed to the enhancement or preservation of value of the estate. Accordingly, there was no actual and demonstrable benefit to the estate and the creditors.

■ The settlement with the NSNJ Bondholders may have saved litigation costs, but this Court is reluctant to allow administrative expense claims to creditors' attorneys for their participation in a settlement on behalf of their own clients. It is an incongruous result to construe Section 503(b) to allow compensation to the creditors' attorneys for doing the job that their clients hired them to do, e.g., for their efforts to ensure adequate disclosure and appropriate treatment of their client's claim, even if the resolution ultimately protects the estate from further litigation liability.

Based upon the foregoing the Court determines that the Applicants did not meet the burden of proving that their efforts provided a substantial contribution which directly benefitted the debtor's estate and the creditors. The ultimate settlement and postconfirmation modification of the plan may have resulted in some benefit to the estate, but failed to amount to a substantial contribution.[7] The Court concludes that the Applicants acted primarily in their own interest and not for the benefit of the estate as a whole.

ORDERED that the Applicants' request for compensation pursuant to 11 U.S.C. § 503(b) is denied.

---

7. It may be appropriate for the Applicants to seek compensation out of the funds made available to the bondholders as part of the settlement of their claims. That matter can be decided by the district judge presiding over the class action litigation.