## In re COLORADO–UTE ELECTRIC ASSOCIATION, INC., Debtor.

### No. 90 B 03761 C.

United States Bankruptcy Court, D. Colorado.

Jan. 14, 1991.

Edward T. Ramey, Denver, Colo., for debtor.

Darrell G. Waas, Denver, Colo., for Nat. Rural Utilities Co-op. Finance Corp.

James L. Huemoeller, Denver, Colo., for The Official Unsecured Creditors' Committee.

W. Michael Tupman, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for The Rural Electrification Ass'n.

ORDER ON ISAACSON, ROSENBAUM, WOODS & LEVY, P.C.'s FIRST APPLICATION FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES

PATRICIA A. CLARK, Bankruptcy Judge.

This matter is before the Court on Isaacson, Rosenbaum, Woods & Levy, P.C.'s First Application for Interim Compensation and Reimbursement of Expenses (the Application) pursuant to Section 331 of the Bankruptcy Code. Formal objections to the Application were filed on behalf of the Official Unsecured Creditors' Committee, the Rural Electrification Association, and National Rural Utilities Cooperative Finance Corporation. A hearing was held on this matter.

The debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code on March 30, 1990. Isaacson, Rosenbaum, Woods & Levy (Isaacson or Applicant) and Stinson, Mag & Frizzell (Stinson) served as co-counsel for the debtor from the onset of the case pursuant to two Orders of the Court authorizing each firm's employment both dated April 5, 1990. A trustee was appointed and the debtor was removed from possession on August 3, 1990.

By this Application, Isaacson requests allowance of interim compensation and reimbursement of expenses for the period March 28, 1990 [1] through June 30, 1990 (the request period). The Application seeks an interim allowance of fees in the amount of $84,366.38 which represents 75% of the $112,488.50 fees billed plus 100% of the $14,196.01 in expenses incurred during the request period. Applicant seeks to apply its $27,552.65 prepetition retainer toward any fees allowed and requests that the balance be paid by the Trustee. The current request is limited to 75% of the fees billed to allow for any possible duplication of effort between Stinson and itself pending the submission of a fee application by Stinson covering the same request period.

---

1. The Court notes the inconsistency in dates. Although the petition was filed March 30, 1990, Applicant requests Court authorization for fees and expenses since March 28, 1990.

The Court is charged with the independent responsibility of reviewing all fee applications. This can be an arduous task, particularly in a case of this magnitude. Several of the creditors and other parties in interest have expressed the desire to refrain from making detailed and specific objections until such time as the fees in question are before the Court for final approval. In lieu of a present analysis, the creditors request that the Court reserve 25% of the requested fees. Under the circumstances this procedure is not appropriate. A critical analysis only when final approval is requested would necessarily be hampered by both the passage of time and the multiplication of relevant data to be examined. Thus, the Court must endeavor to analyze the Application while the information is both current and manageable.

The critical elements of any fee analysis are contained in the language of Section 330(a) of the Bankruptcy Code. The Court may award "reasonable compensation for actual, necessary services rendered by such ... attorney ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title...." 11 U.S.C. § 330(a). The Tenth Circuit has adopted a more detailed set of guidelines. *Matter of Permian Anchor Services, Inc.*, 649 F.2d 763, 768 (10th Cir.1981) (adopting the standards enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (11th Cir.1974)). The Court may consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

The Supreme Court recently commented that "the *Johnson* factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended." *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989). In applying for fees, attorneys "should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–1940, 76 L.Ed.2d 40 (1983). *Accord, Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983).

■ The fee applicant bears the burden of proof in all fee matters. *See, e.g., In re Stoecker*, 114 B.R. 965, 969 (Bankr. N.D.Ill.1990). In order to sustain this burden, the entries on the billing statements must contain adequate detail and analysis of each task so that a Court can discern the nature and value of the services. *Ramos v. Lamm, supra* at 553; *In re Seneca Oil Co.*, 65 B.R. 902, 908 (Bankr.W.D.Okla. 1986). "[W]here services are listed or lumped together without any specific indication of the time spent on each service the explanation is inadequate." *In re Associated Grocers of Colorado, Inc.*, Case No. 86 B 09650 C, slip op. at 7 (Bankr.D.Colo. 1990). *Accord, In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 583 n. 29 (Bankr. D.Utah 1985) (cases cited). Any uncertainties arising because of inadequate records must be resolved against an applicant. *In re Associated Grocers, supra* at 7; *In re Horn & Hardart Baking Co.*, 30 B.R. 938, 944 (Bankr.E.D.Pa.1983) ("The Court should not be required to indulge in guesswork, nor undertake extensive labor to justify a fee for an attorney who has not done so himself.").

Turning to the present Application, the Court is faced with the very situation addressed in *Associated Grocers,* the lumping of services together without indicating how much of the total time listed was spent on each individual task. It is the obligation of counsel to provide a fee application with sufficient detail to enable the Court to

properly allocate and analyze the fees. The failure to meet this obligation necessarily imposes greater burdens on the Court and leads to some arbitrary assumptions being made.

■ The first area of services listed with the Application is "Member Collection Cases; ID # 09437–020." Included in this category are services related to state court collection cases initiated on behalf of the debtor against nine members for unpaid power bills. The cases were originally filed in various courts throughout the State of Colorado but were eventually consolidated in Denver County, Colorado. Applicant submits that significant time was necessarily involved in preparing the complaints and researching various potential setoff claims and defenses that might be asserted. Applicant claims that 107.4 attorney hours and 3.2 paralegal hours were spent in this area accounting for a total fee of $14,-754.50.[2]

It appears to the Court that many of the efforts expended by Applicant in this area have yet to result in a tangible benefit to the estate. Applicant submits that the bulk of the work done in this area "went into the preparation for what will be the inevitable defenses to those actions if and when those collection actions do go forward again." Transcript of November 16, 1990 hearing, at 73. The Trustee has arranged to have the collection cases "put on hold for awhile" and "they may be resolved and not get going again." *Id.* This Court cannot charge the assets of the estate for extensive and costly research into what were then anticipated defenses and what may ultimately be academic exercises. An estimated 40% of the billed time was spent on research.

■ The Court is concerned by the number of times that the term "confer" appears in the billing statements. Initially, since Applicant has chosen to use this terminology, the Court cannot determine whether the discussions took place in person or by telephone. The descriptions themselves are, in some cases, woefully inadequate. Many entries fail to indicate a topic of the conversation.[3] Others list the other participants by surname only.[4] While this practice may appear sufficient to the attorneys who are intimately familiar with all of the parties involved, the Court is not as familiar with them. Further identification in the billing statements or a general directory of names and positions added as an exhibit to an application would be helpful. While there does not appear to be excessive double-billing for conferences, there are 98 separate entries indicating some sort of conference in this area alone. It would be a conservative estimate to say that approximately 30% of the time spent in this area was spent "in conference." The Court recognizes the valuable benefits enuring to a client from both intraoffice and interoffice communication between attorneys. When such communication is reasonable, it should not be penalized. A standard pattern of *excessive* communication may have been helpful to the attorneys but cannot be considered to be quality billable hours reasonably chargeable, to the client. *Accord, In re Grayhall Resources, Inc.,* Case No. 86 B 03547 E, slip op. at 14 (Bankr.D.Colo.1990). Again, the Court's analysis is greatly hampered by Applicant's practice of lumping services together.

Finally, the Court has found certain instances where the fees billed would more properly be characterized as overhead.[5] For the reasons stated above, 50% of the request for fees in connection with the

---

2. All expense reimbursement requests will be handled later in this Order.

3. For example, on May 10, 1990, Ms. Eisaguirre noted the entry "Confer with J. McNeill" with no further description.

4. For an extreme example, on March 29, 1990, Mr. Steeler billed 2.0 hours for a "Conference re Bankruptcy Planning and Status of Cases" *with-*

*out any* indication as to whom the other participants were.

5. Although the billing statements are not clear, Ms. Esaguirre has apparently billed for preparing documents for filing (April 24, 1990), filing documents (May 23, 1990), copying (June 13, 1990), and setting up and opening files (April 25, 1990 and May 14, 1990).

member collection cases will be allowed at this time. Applicant will be allowed fees of $7,377.25 in connection with this category without prejudice to request the balance when and if the benefits to the estate from the extensive research become known.

The application next requests fees under the heading "Rate Cases Before the Public Utilities Commission, ID # 09437–013." The case is now on appeal to the District Court in Montrose County. All of the hours involved in this area were billed by Ms. Hopfenbeck who has particular experience in public utilities matters. The 10.2 hours expended in this category does not appear to be excessive, therefore, the full $1,479 requested will be allowed.

■ For "Shell Western Litigation; ID # 09437–003" Applicant requests compensation for 21.8 total hours or $2,829.50. This category involves services related to two prepetition pieces of litigation. One is a declaratory judgment action filed by Shell Western E & P, Inc., against the debtor challenging the constitutionality of C.R.S. § 40–6–111(4)(c). Applicant negotiated a stipulated relief from stay with Shell Western which delays the trial by four months. Applicant contends that it determined that Shell Western could be successful in getting a relief from stay and, therefore, stipulated in order to postpone the trial. The other litigation is before the Colorado Public Utilities Commission for a determination of whether Shell Western, Atlantic Richfield and Exxon are entitled to refunds from the debtor on account of the debtor's use of a flat rate charge. Again, Applicant negotiated a stipulated relief from stay to allow the matter to proceed to a hearing.

The Court has no problem with litigants actively and realistically anticipating the ultimate outcomes in such cases. Indeed, if the oil companies would have been successful in receiving relief from stay, fees in connection with defending such motion would have almost certainly exceeded those presently requested. The extensive use of conferences may be partly responsible for the result. Consequently, the request for $2,829.50 in fees in connection with the

Shell Western relief from stay will be allowed in full.

■ Applicant requests $10,174.50 in fees for 67.3 attorney hours and 2.7 paralegal hours in connection with "The Rural Electrification Administration, the Colorado Public Utilities Commission Jurisdiction Dispute; ID # 09437–014." The debtor felt that it was subject to conflicting regulatory directives and filed an action in the United States District Court seeking to resolve the jurisdictional dispute. The matter had not yet been decided when the effective date of the ordered rate decrease neared. Applicant instituted an adversary proceeding in the Bankruptcy Court seeking to maintain the status quo pending a resolution of the dispute. Applicant was initially successful in obtaining a temporary restraining order but failed to obtain a preliminary objection when Judge Matheson determined that the Colorado Public Utilities Commission was the debtor's principal rate regulatory authority. Applicant requests compensation for preparing the pleadings and preparing for and attending the hearings.

The Court is cognizant of the debtor's interest in the ultimate outcome of the dispute between the two regulators. The Court also acknowledges the potential benefit to the estate by keeping the rates at the previous level for the two-day period. Whether or not the estate will be allowed to retain these additional utility charges has yet to be determined. The Court will allow 50% of the requested fees, or $5,087.25, without prejudice to request the balance when and if the estate is allowed to retain the funds.

■ Applicant requests $40,737.50 for 276.9 attorney hours and 5.2 paralegal hours for "Defense of Trustee Motions Representation, ID # 09437–012." The services rendered in this category were in response to Intermountain Rural Electric Association's April 10, 1990 motion requesting the appointment of a trustee or an examiner with powers. Applicant states that considerable time was spent investigating the facts, researching, preparing a response, collecting and designating exhibits, and interviewing witnesses. Applicant

spent a great deal of time speaking with people from Coopers & Lybrand regarding the debtor's management. Extensive discovery was conducted and procedural motions were filed. The hearing on Intermountain's motion was held July 19–20, 1990. Applicant speculates that the fees incurred following the request period (after June 30, 1990) in this category may run as high as $90,000.

Applicant cites the scope of Intermountain's motion, the complexity of the issues and the importance of the issue to the debtor as an explanation of how this large fee is reasonable. The advisability of the time spent pursuing certain actions, for example, the motion for continuance of the hearing and the concept of a negotiating committee is questionable. The Court also questions the value of Ms. Seal, the paralegal, taping public radio broadcasts about the debtor.

Overall, the Court finds that the time expended in this area was grossly excessive. The estate was not ultimately benefitted by Applicant's efforts. In fact, the estate was harmed by the delay in the appointment of a trustee. Conflicts between and among the debtor and its board of directors were formidable and did not allow effective and efficient progress toward reorganization. Further, the sincerity and hard work of the board and management could not overcome their lack of financial sophistication, experience, and business acumen which is needed to effectively reorganize a business of this size and nature. A number of the creditors did not have confidence in the debtor-in-possession's ability to reorganize. A minimal amount of objective discovery should have revealed that the motions for the appoint-

ment of a trustee were well founded. While Applicant had an obligation to keep the debtor in possession, if appropriate it also owed a duty to the Court and the creditors. For these reasons, the Court will allow $6,500 of the fees requested in opposing the trustee's motion.

■ The "Bankruptcy Representation; ID # 09437–008" category accounts for $37,369.50 of the fee request. Some 275.0 attorney hours and 55.9 paralegal hours are included. The narrative associated with this portion of the Application extends over more than three pages single spaced and purports to cover such areas as general case administration, cash collateral, employee benefits, utilities deposits, the employment of professionals, Craig 3 lease issues, other lease issues, motions for relief from stay, Public Utilities Commission intervention, and the Office of Consumer Counsel intervention.

■ In addition to the problems presented when services are lumped together without allocating the time spent among the various tasks, which problem is especially troublesome under this heading, the Court is hindered in its evaluation by the sheer breadth of services included. Surely, the attorneys involved are better suited to allocate the time spent to each of the areas. Further, there again appears to be excessive billing for conferences (418 separate "confer" or "call to" entries). Finally, certain charges more properly allocable to overhead are apparent.[6] Accordingly, 50% of the requested fees will be allowed, for a total of $18,684.75.

■ The category "General Representation; ID # 09437–002" involved 20.0 at-

---

6. For example: A paralegal, Ms. Resler billed time on April 6, 1990 to "ready documents for filing." Mr. Bench billed time on April 6, 1990 to "obtain order from court." From the context of the billing statements, the Court must assume that this activity merely involved obtaining a copy of the Order and not actually procuring the Court's signature. Ms. Comito billed 0.4 hour on April 11, 1990 to "meet client at airport to pick up bankruptcy document." Ms. Resler billed time on April 11, 1990 for "numerous phone calls to ... counsel to give notice of hearing on emergency motion; arrange hand

delivery." Ms. Comito billed 1.3 hours on April 13, 1990 to "file interim stipulation and order with bankruptcy court; confer with Judge's clerk and wait for Judge's signature; pull case for C. Bench." Mr. Bench billed time on May 10, 1990 to "fax OCC compliance order to I. Ness and D. Phillips." If Applicant desires, it may use professionals for such services. The estate, however, cannot be charged the professionals' full rate. Only a charge that is commensurate with the degree of skill required is appropriate.

torney hours and 17.7 paralegal/law clerk hours, for a total fee of $3,380. Applicant's narrative reflects that property tax and political concerns comprised the work in this category. While the Court recognizes the importance of addressing each of these issues, the Court fails to see the value enuring to the estate from Mr. Grueskin, a partner, spending 3.2 hours arranging and then attending a brief meeting with the governor's chief of staff to "address economic concerns of the state administration regarding the reorganization process." The April 30, 1990 entry by Ms. Eisaguirre has apparently been miscategorized and more appropriately belongs in the member collection cases category.

Interestingly, the narrative in the Application utterly fails to describe some 18.4 hours of services which comprise nearly half of the requested hours in the category. Law clerk Cook apparently spent a great portion of that unexplained time researching what appear to be potential lender liability claims against the Rural Electrification Administration and how they might be impacted by the Federal Tort Claims Act. Applicant fails to establish how such efforts benefitted the estate. The Court will allow the fees contained in this category with the exception of the items mentioned above, for a total allowed fee of $1,989.50.

■ The final area of requested compensation is for "Fee Application; ID# 09437–021." Applicant primarily utilized paralegal time to perform these services and billed the attorneys' time at 50% of the ordinary rate. There were 12.6 attorney hours and 33.1 paralegal hours expended in this area, for a total fee of $1,764. These fees will be allowed in full.

To summarize, fees are allowed as follows:

| Category | Allowed Fees |
|---|---|
| Member Collection Cases | $ 7,377.25 |
| PUC Rate Cases | 1,479.00 |
| Shell Western Litigation | 2,829.50 |
| REA/PUC dispute | 5,087.25 |
| Trustee Motion Defense | 6,500.00 |
| Bankruptcy Representation | 18,684.75 |
| General Representation | 1,989.50 |
| Fee Application | 1,764.00 |
| | $45,711.25 |

---

Applicant also requests reimbursement for certain expenses. For purposes of this Application, the expenses are summarized as follows:

| Item | | Amount |
|---|---|---|
| Photocopies | | $ 6,879.01 |
| Telecopies | | 1,967.00 |
| Computer Research | | 1,296.84 |
| Postage | | 1,276.04 |
| Long Distance Telephone | | 979.83 |
| Filing Fees | | 850.00 |
| Courier Service | | 635.34 |
| | Federal Express | $409.39 |
| | Yellow Cab | 103.60 |
| | USA Direct | 88.10 |
| | Messenger | 34.25 |
| Deposition Fees | | 588.25 |
| Travel Expenses | | 144.70 |

| Item | Amount |
|---|---|
| J. Forbes and Associates | $ 22.00 |
| Less: Refunds and Reimbursements | (443.00) |
| | $14,196.01 |

Applicant explains that it frequently used Federal Express and long distance telephone services because the debtor, many creditors, and co-counsel were all located outside of Denver. The Court is aware that, while these charges appear large certain of them may be reasonable and necessary given the circumstances of the particular case.

▇ The Court has been advised that the charges for photocopying and postage are because Applicant was primarily responsible for several large mailings, especially at the beginning of the case. The objecting creditors seem satisfied by such explanation. The Court would note that, even allowing for the several instances where copies were made at a court or regulatory agency, at Applicant's stated rate of $.15 per copy, this charge represents over 45,000 copies. Interested parties are put on notice that, in the future, when bulk mailings are necessary, the Court expects that a commercial copying service will be utilized. Such service should result in a substantial savings of both labor and cost.

▇ The other charges appear to be accompanied by the minimally necessary explanation except for the entries for "J. Forbes and Associates" and the computer-assisted research charges.[7] In *In re Standard Metals Corp.*, 105 B.R. 625, 626 (Bankr.D.Colo.1989), this Court adopted the position that computer research expense may be compensable where it is both necessary and attributable to a particular client. In addition, the billing statements must indicate the date, the person conducting the search, the length of the search, as well as providing evidence of the necessity for the use of the service. When such justification is not provided, the time is not compensable. Applicant bills for LEXIS in four categories, member collection cases,[8] defense of the trustee motion,[9] bankruptcy representation,[10] and general representation.[11] Only one of the billing entries is arguably sufficient. The Court will disallow the $22 charge for "J. Forbes and Associates" and $1,271.76 of the computer-assisted research charges. The Court will allow expense reimbursement of $12,902.25.

Accordingly, it is hereby

ORDERED that Isaacson, Rosenbaum, Woods & Levy, P.C., is allowed fees in the amount of $45,711.25 and expenses in the amount of $12,902.25, for a total of $58,-

---

**7.** The Application states "Applicant utilized computer assisted research (LEXIS) to conduct a limited amount of research when necessary. Complex questions and very recent opinions which were relevant to the case necessitated the use of LEXIS."

**8.** Applicant incurred $27.89 in LEXIS charges for two separate searches. Only the second search is mentioned in the billing statements. On June 6, 1990 Mr. Friedman, a law clerk, notes, "Research for L. Eisaguirre re finding cases on LEXIS." This explanation fails to meet the requirements of *Standard Metals.*

**9.** Applicant incurred $360.12 in LEXIS charges for three searches. Two entries on the billing statements mention LEXIS. On April 25, 1990, Mr. Bench billed 0.4 hour to "review LEXIS Eastern Airlines Cases re Trustee Matter." This explanation is marginally sufficient and is presumed to correspond to the $25.08 charge. On April 27, 1990, Ms. Seal, a paralegal, billed 0.3 hour to "Assist C. Bench in LEXIS Research." This explanation fails to meet the requirements of *Standard Metals.*

**10.** Applicant incurred $282.56 in LEXIS charges for three searches. Two entries on the billing statements mention LEXIS. On June 6, 1990, Ms. Seal, a paralegal, notes "research case on LEXIS." Again, on June 7, 1990, Mr. Friedman, a law clerk, bills 0.2 hour for "research for C. Bench re search for bankruptcy case on LEXIS." Neither of these explanations meet the requirements of *Standard Metals.*

**11.** Applicant incurred $626.27 in LEXIS charges in this category. The billing statements contain no mention of a LEXIS search.

613.50 for the period March 28, 1990 through June 30, 1990; and it is

FURTHER ORDERED that Isaacson, Rosenbaum, Woods & Levy, P.C., shall apply its $27,552.65 prepetition retainer toward satisfaction of the fees allowed; and it is

FURTHER ORDERED that the trustee may pay Isaacson, Rosenbaum, Woods & Levy, P.C., the sum of $31,060.85 as the balance of the fees allowed over the prepetition retainer; and it is

FURTHER ORDERED that all amounts allowed by this Order are subject to final review and possible recapture.